[No. 43679.    En Banc.    March 4, 1976.]

ROBERT DOUGLAS CAMPBELL, *as Executor, Appellant,* v. RICHARD SAUNDERS, *Respondent.*

*McCutcheon, Groshong, Geisness & Day, W. Ronald Groshong, Montgomery, Purdue, Blankinship & Austin*, and *R. George Ferrer*, for appellant.

*Skeel, McKelvy, Henke, Evenson & Betts, Frederick V. Betts*, and *Douglas S. Dunham*, for respondent.

FINLEY, J.—Plaintiff petitioned the superior court for a writ of mandamus directing that interest must be paid on a tort judgment obtained against the City of Bellevue. The superior court denied the petition. This appeal followed.

The dispositive issues are: (1) Did the City of Bellevue have the legislative authorization to enact Bellevue Municipal Code § 2.24.020 (Ordinance No. 146, § 2 (1956))? And (2) did the enactment of this ordinance create a right to the payment of interest on tort judgments rendered against the City? The answer to both issues is yes.

A judgment on a jury verdict for wrongful death and personal injury was entered against the City on October 10, 1973. The judgment was affirmed in *Campbell v. Bellevue*, 85 Wn.2d 1, 530 P.2d 234 (1975), and became final on February 11, 1975. On February 11, 1975, the City paid the principal amount of the judgment with costs, but without interest. Plaintiff subsequently made a written demand on the defendant, Director of Finance for the City of Bellevue, to draw a warrant on the City's accident fund for the amount of the interest on the judgment at the rate of 8 percent per annum in the sum of $27,004.90, from October 10, 1973, to February 10, 1975. When defendant refused the demand, plaintiff petitioned the superior court for a writ

of mandamus directing that interest be paid on the tort judgment. The writ was denied and this appeal followed.

Bellevue Municipal Code § 2.24.020,[1] which provides for the payment of interest on tort judgments, became effective in 1956 when Bellevue was classified as a third-class city. In 1970, Bellevue became a noncharter, optional municipal code city governed by RCW Title 35A. The provisions of the 1956 ordinance have remained in effect as originally enacted.

With respect to the first issue, plaintiff contends that the City had the authority to enact the ordinance because of the legislature's enactment of RCW 35.31.050,[2] and Bellevue Municipal Code § 2.24.020 is consistent with the legislature's enactment of RCW 35A.31.060.[3]

Defendant argues that the City did not have the authority to enact the ordinance because it was enacted before either case law[4] or statute[5] abrogated sovereign immunity for municipalities.

Municipal corporations, as creatures of the state, derive their authority and powers from the state's legis-

---

[1]Bellevue Municipal Code § 2.24.020 provides:

"*There is created* an accident fund upon which the city clerk *shall* draw warrants for the full amount of any judgment, *including interest* and costs, against the city on account of personal injuries . . . suffered by any person as shown by a transcript of the judgment, duly certified to the city clerk. . . . [Warrants] shall draw interest at the rate of six percent . . . per annum, . . ." (Italics ours.)

[2]RCW 35.31.050 provides:

"Every city of the second or third class and town may create an accident fund upon which the clerk shall draw warrants for the full amount of any judgment including interest and costs against the city or town on account of personal injuries suffered by any person as shown by a transcript of the judgment duly certified to the clerk. The warrants . . . shall draw interest at the rate of six percent per annum . . ."

[3]"Every code city may create an accident fund upon which the clerk shall draw warrants for the full amount of any judgment including interest and costs against the city on account of personal injuries suffered by any person as shown by a transcript of the judgment duly certified to the clerk. Warrants . . . shall draw interest at the rate of six percent per annum . . ." RCW 35A.31.060.

[4]*Kelso v. Tacoma*, 63 Wn.2d 913, 390 P.2d 2 (1964).

[5]RCW 4.96.010 (Laws of 1967, ch. 164, § 1).

lative body. *Campbell v. Bellevue, supra* at 14; *Othello v. Harder*, 46 Wn.2d 747, 752, 284 P.2d 1099 (1955); P. Trautman, *Legislative Control of Municipal Corporations in Washington*, 38 Wash. L. Rev. 743, 744 (1963). Likewise, the protection provided municipalities under the principle of sovereign immunity is derived from the state. *Silvernail v. County of Pierce*, 80 Wn.2d 173, 492 P.2d 1024 (1972); *Kelso v. Tacoma*, 63 Wn.2d 913, 916, 390 P.2d 2 (1964). With respect to a municipality's immunity from liability for payment of interest on tort judgments rendered against it, a city can be sued only when, in the manner, and to the extent that the legislature has given its consent. *See Silvernail v. County of Pierce, supra* at 174; *Fosbre v. State*, 76 Wn.2d 255, 256, 456 P.2d 335 (1969).

Laws of 1909, ch. 128, § 1, p. 423, authorized second-, third-, and fourth-class cities to create an accident fund to pay judgments for personal injuries rendered against such cities. *State ex rel. Billings v. Lamprey*, 57 Wash. 84, 88, 106 P. 501 (1910). Section 2 of that statute (Laws of 1909, ch. 128, § 2, p. 423) provided that "the clerk shall draw warrants upon the accident fund for the full amount of said judgment, interest and costs as shown by said transcript of judgment."[6]

In 1967, the Optional Municipal Code was adopted. It provides that code cities "may create an accident fund upon which the clerk shall draw warrants for the full amount of any judgment including interest and costs" for the payment of tort judgments rendered against such cities. RCW 35A.31.060. Also, RCW 35A.90.010[7] further provides that all city ordinances lawfully in force at the time of becoming a code city, and not inconsistent with the Optional Munici-

---

[6]This statute was reenacted in 1965 in substantially similar language and codified as RCW 35.31.050. See footnote 2.

[7]RCW 35A.90.010 provides, in relevant part: "[A]ll . . . ordinances . . . lawfully in force in such city or town at the time of becoming a code city, and not inconsistent with or repugnant to this title, shall continue in force in such code city until amended or repealed as provided by law."

pal Code, are to continue in force until amended or repealed.

The language in the 1909 statute and its successors did not require but permitted third-class and code cities to create an accident fund. The City of Bellevue had the requisite legislative authority to enact an ordinance to create an accident fund and to provide for the payment of tort judgments, including interest and costs. The Bellevue ordinance is consistent with the Optional Municipal Code, and it was lawfully in effect at the time the original judgment in *Campbell v. Bellevue, supra*, was entered.

The second issue is whether the city ordinance created a right to, as opposed to a mere procedure for, the payment of interest on tort judgments.

Plaintiff contends that the ordinance establishes a right against the City of Bellevue for payment of tort judgments rendered against it, including liability for interest. In this respect, plaintiff argues that either the express language or a reasonable construction of the ordinance evidences the City's prior consent to pay interest on tort judgments.

Defendant's response is that (1) the ordinance establishes a method, and not an independent right, for payment of interest on judgments and (2) RCW 4.96.010[8] expresses a limited legislative consent allowing municipalities to be sued for tortious conduct, but does not expressly or by reasonable construction provide for interest, and none should be imposed, and (3) no statute or ordinance, prior to the passage of Laws of 1975, ch. 26, § 1, p. 39,[9] created an

---

[8]RCW 4.96.010 provides, in relevant part:

"All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation . . ."

[9]Laws of 1975, ch. 26, § 1, p. 39, provides:

"Judgments founded on the tortious conduct of the state of Washington or of the political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in their governmental or proprietary capacities, shall bear interest at the rate of eight

independent right to interest or expressly waived a city's sovereign immunity from liability for interest.

We have held that a city is liable for interest on judgments rendered against it only if a statute expressly or by reasonable construction so provides. *Fosbre v. State, supra* at 256; *Bond v. State*, 70 Wn.2d 746, 748, 425 P.2d 10 (1967). The mandatory language of the Bellevue Municipal Code § 2.24.020 (*see* footnote 1) allows us to draw no other conclusion but that the City expressly has consented to, and necessarily created a right to, payment of interest on tort judgments rendered against it. The ordinance explicitly states that an accident fund *is* created and that the city clerk *shall* draw warrants upon the fund for the amount of the judgment, including *interest* and costs. We hold that the City consented to and created a right to payment of interest on tort judgments. To accept defendant's contention that the ordinance created a mere method or procedure for payment of interest, as opposed to a right, would nullify the action taken by the Bellevue City Council which had chosen rather clear language in the enactment of the ordinance.

*Fosbre v. State, supra*, considered the question of the liability of the state for interest under RCW 4.92.090.[10] The court held that the state's acceptance of liability for tort damages does not subject the state to liability for interest on damage awards. Subsequently, *Silvernail v. County of Pierce, supra*, met the question of the liability of a county for interest on tort judgments under RCW 4.96.010 and followed the reasoning in *Fosbre*. Both *Fosbre* and *Silvernail* rec-

---

percent per annum from the date of entry thereof: PROVIDED, That in any case where a court is directed on review to enter judgment on a verdict or in any case where a judgment entered on a verdict is wholly or partly affirmed on review, interest on the judgment or on that portion of the judgment affirmed shall date back to and shall accrue from the date the verdict was rendered."

[10]RCW 4.92.090 provides:

"The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

ognized that the state and its political subdivisions are not liable for interest unless the liability arises from either the express terms or reasonable construction of a statute.

In the instant case, RCW 35A.31.060 permits a code city to pay interest and Bellevue Municipal Code § 2.24.020 requires the payment of interest. Thus, the applicable statutory authorization for the payment of interest falls within the exception to the general rule noted in *Fosbre* and *Silvernail*. Those cases and their predecessors[11] do not conflict with the result reached in the instant case.

■ During oral argument plaintiff conceded that the applicable rate of interest is that provided in Bellevue Municipal Code § 2.24.020, *i.e.*, 6 percent. We agree. The City is liable only to the extent that it has expressly authorized payment of interest. *See Silvernail v. County of Pierce, supra* at 174; *Fosbre v. State, supra* at 256. The City is not liable for interest at the rate of 8 percent under the general statute on judgments, RCW 4.56.110(2). *See State v. Lacey,* 84 Wn.2d 33, 38, 524 P.2d 1351 (1974) (the 6 percent rate of interest for eminent domain verdicts as provided by statute rather than the 8 percent rate provided for in the general statute on judgments was held applicable); *Renton v. Scott Pac. Terminal Inc.,* 9 Wn. App. 364, 377, 512 P.2d 1137 (1973).

The order of the trial court must be reversed and the writ of mandamus shall issue.

It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

---

[11]*E.g., Bond v. State,* 70 Wn.2d 746, 425 P.2d 10 (1967); *Pape v. Armstrong,* 47 Wn.2d 480, 287 P.2d 1018 (1955).