[No. 22772–6–I.   Division One.   March 5, 1990.]

JOHN CHERRY, *Appellant,* v. THE MUNICIPALITY
OF METROPOLITAN SEATTLE, *Respondent.*

*Paul Gillingham,* for appellant.

*John Cherry,* pro se.

*Desmond L. Brown, Jillian Barron,* and *Preston, Thorgrimson, Ellis & Holman,* for respondent.

FORREST, J.—John Cherry appeals an arbitrator's determination that his former employer, the Municipality of Metropolitan Seattle (Metro), properly discharged him for violating a policy prohibiting employees from possessing concealed weapons while on duty or on Metro property. Cherry asserts that Metro's no–weapons policy conflicts with a state law which regulates licensing and possession of firearms. We reverse.

## FACTS

Cherry had worked as a Metro bus driver for 14 years. On August 20, 1987, Cherry boarded a Metro vehicle parked in a Metro lot to begin his shift. He was equipped with a uniform jacket and a bag containing some belongings. Before Cherry departed, a supervisor asked him to come to his office for questioning. The supervisor informed Cherry that he wished to discuss allegations that Cherry carried a weapon and drugs while on duty. Cherry obtained permission to go to his car before beginning discussions. He placed his uniform jacket in his car.

The supervisor directed Cherry to empty his pockets, the contents of his bag, and to retrieve his jacket from his car. Cherry's bag contained two potential weapons: a 6–inch pointed brass rod, and an electric cattle prod used to administer electric shocks. The bag also contained several containers of prescription drugs and a bottle of codeine pills. Cherry admitted that he concealed in his uniform jacket a loaded .38 caliber pistol and said that he had a concealed weapons permit.

Metro determined that Cherry violated two of its personnel policies by: (1) carrying three concealed weapons—a violation of a no–weapons policy which prohibited the possession of any weapon by a transit operator on duty or on Metro property; and (2) failing to report use of several medically authorized drugs which could cause impairment

of job performance and failing to produce medical authorization for possession of a controlled substance, codeine. Metro suspended Cherry for 30 days effective August 27, 1987, and terminated him on September 25.

Cherry challenged his discharge, and the matter went before an arbitrator. The arbitrator declined to determine whether Metro could terminate Cherry for violating the policy requiring employees to report the use of prescribed drugs. The arbitrator found that Cherry's admitted violation of the no–weapons policy alone justified his termination.

Cherry appealed the decision by filing an action in King County Superior Court. Metro filed a motion to dismiss pursuant to CR 12(b)(6), which the court denied. Metro then moved for summary judgment and requested terms claiming that Cherry was pursuing a frivolous action. The court granted the motion for summary judgment but denied the request for terms.

This appeal presents one issue: Is Metro's no–weapons policy valid as applied to firearms? This is a case of statutory, not constitutional interpretation. The issue is not as to the constitutional limitations placed upon the State Legislature in the regulation of firearms, but as to the limitations the State Legislature has placed upon municipal corporations to do so.

Municipal corporations are creatures of the State.[1] In general, the Legislature has plenary authority to grant or withhold powers from municipal corporations as it deems fit.[2] RCW 9.41.290 provides that the State "fully occupies and preempts the entire field of firearms regulation", that local laws and ordinances that are "inconsistent with, more restrictive than, or exceed the requirements of state law" are preempted, and that "[c]ities, towns, and counties or other municipalities may enact only those laws

---

[1]*Campbell v. Saunders,* 86 Wn.2d 572, 574, 546 P.2d 922 (1976).

[2]*State ex rel. Barlow v. Kinnear,* 70 Wn.2d 482, 486, 423 P.2d 937 (1967).

and ordinances relating to firearms that are specifically authorized by state law and are consistent" with state law.[3] Preemption cannot be more clearly expressed. Nothing in state law specifically authorizes municipal corporations to regulate firearm possession by their employees.

Where the Legislature wishes to grant an exemption to the general policy, it does so explicitly. RCW 9.41.300(2) provides:

> Notwithstanding RCW 9.41.290, cities, towns, counties, and other municipalities may enact laws and ordinances:
>
> . . . .
>
> (b) Restricting the possession of firearms in any stadium or convention center, operated by a city, town, county, or other municipality, except that such restrictions shall not apply to:
> (i) Any firearm in the possession of a person licensed under RCW 9.41.070; . . ..

It is strikingly significant that even in the limited area of municipally operated stadiums or conventions centers, regulatory ordinances do not apply to persons, who like Cherry, are licensed under RCW 9.41.070 to carry concealed weapons. If such persons are exempt where a specific regulatory power is delegated, a fortiori they are exempt when no such power is delegated. There is simply no statutory authority granting municipalities the authority to regulate the possession of firearms by its employees.

RCW 9.41.070(1) provides for the issuance of a license to carry a concealed pistol "for the purposes of protection or while engaged in business, sport, or while traveling." This

---

[3]RCW 9.41.290: "The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law and are consistent with this chapter. Such local ordinances shall have the same or lesser penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality."
When read in its entirety, total preemption is indisputable.

language is comprehensive. Cherry was issued a license under this statute. Having so complied with state law, and in the absence of any state law restricting Cherry from carrying the pistol while on the job, any restriction on his possession of the pistol imposed by a municipality is "inconsistent with, more restrictive than, or exceed[s] the requirements of state law" and is therefore preempted by RCW 9.41.290.

The sweep of RCW 9.41.290 is broad. If it is too broad, it is up to the Legislature, not this court, to narrow it. In the absence of a specific exception to RCW 9.41.290, a municipality is preempted from enacting laws and ordinances on the possession of firearms.[4] Metro's no–weapons policy is expressed in a resolution rather than a law or ordinance. There is no rational basis for treating resolutions differently than laws and ordinances. It would be absurd to say that Metro can accomplish by resolution what it cannot accomplish by ordinance.

There were other alleged violations of the no–weapons policy before the arbitrator. It is impossible to know what her decision would have been in the absence of Cherry's possession of the firearm. Accordingly, further proceedings are necessary.[5]

Reversed and remanded for further proceedings not inconsistent with this opinion.

RINGOLD, J. Pro Tem., concurs.

WEBSTER, J. (dissenting)—I respectfully dissent. While I agree that the preemption language of RCW 9.41.290 is broad, I do not believe the Legislature intended to prohibit

---

[4]Any reliance on *Second Amend. Found. v. Renton*, 35 Wn. App. 583, 688 P.2d 596 (1983), is misplaced because RCW 9.41.290 was merely mentioned in a footnote, was not applied to the facts, and subsequent to the filing of the opinion, RCW 9.41.290 was amended and strengthened as to the scope of preemption. *See* Laws of 1983, ch. 232, § 12; Laws of 1985, ch. 428, § 1.

[5]We decline to address Cherry's argument that the no–weapons policy violates his right to bear arms under the Washington State Constitution.

municipal corporations from executing an agreement with an employees' union which contains a provision limiting use and possession of weapons on the job.

The no–weapons policy that is the center of this dispute is a subsection of a contract between the transit operators' union and Metro. The policy is contained in a section entitled "operator security." This section contains several parts aimed at protecting transit operators from assault and theft by the public. For example, the section creates a task force made up of labor and management representatives to address the problem of assaults and threatening situations; specific procedures were developed to handle those situations where confrontations could occur. Unquestionably, the result of the collective bargaining process between Metro and the union was to deal with the issue of operator security not by arming individual employees, but by other methods.

The preemption language of RCW 9.41.290 refers to "laws and ordinances relating to firearms", not terms of collective bargaining agreements. Admittedly, a municipality cannot achieve something through an employment regulation that it could not accomplish directly through an ordinance. Nevertheless, I cannot believe that the Legislature intended RCW 9.41 to prevent reasonable regulation of and policymaking in the workplace. RCW 9.41.290 does not purport to address this sort of workplace regulation where parties to a collective bargaining agreement presumably consider various methods of addressing a specific problem and choose one that does not involve bus drivers carrying guns. Moreover, if the union, which was undoubtedly represented by counsel when negotiating the agreement, felt that bus drivers had a right to carry guns on the job the union should have asserted that right then. The mere presence of the term in the agreement suggests that the union knowingly waived the right in return for concessions from Metro—*e.g.,* alternative measures to prevent employee assaults—when it agreed that union members would not carry guns on duty. Metro's concessions estop

the union and its individual members from asserting this right at a later stage.

I would affirm.

Reconsideration denied March 29, 1990.

Review granted at 114 Wn.2d 1026 (1990).