[No. 27598-4-I.    Division One.    February 18, 1992.]

VIRGINIA JOHNSON, *Respondent*, v. THE EMPLOYMENT
SECURITY DEPARTMENT, ET AL, *Appellants*.

*Kenneth O. Eikenberry, Attorney General,* and *Evelyn A. Fielding, Assistant,* for appellant State.

*Phillip A. Thompson,* for appellant Municipality of Metropolitan Seattle.

*Deborah Maranville* of *University of Washington School of Law Civil Law Clinic,* for respondent.

COLEMAN, J. — The Employment Security Department and the Municipality of Metropolitan Seattle appeal the trial court's order granting Virginia Johnson unemployment compensation benefits. Appellants assert that Johnson should be denied unemployment compensation because her employer's rule prohibiting firearms is reasonable and her on-duty possession and loss of a loaded firearm is gross negligence which constitutes disqualifying misconduct under *Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 752 P.2d 372 (1988). We reverse.

During the early morning hours on Friday, January 13, 1989, Virginia Johnson, a Metro bus driver, was awakened by noises outside. Because her husband was at work for Metro on an early shift, Johnson went to her bureau, retrieved her gun, and placed the gun in its unzipped case under her husband's pillow. Later that morning while she was getting ready for work, her husband returned from his bus run and went upstairs to take a nap. He saw the gun, zipped it into its case, and tossed it onto her handbag at the foot of the bed. Shortly thereafter, Ms. Johnson left for work, taking the handbag with her. The large, black handbag was about the size of a 1-foot cube, with two zipper openings. The administrative law judge (ALJ) found that during the day Johnson looked into her handbag at least once, but that Johnson stated she did not see her gun in its case in the handbag.

On Monday, January 16, 1989, Johnson was informed that her gun had been found on the bus she had driven the previous Friday. The gun was found on the floor beside the driver's seat next to the place where Johnson kept her handbag. Apparently, at some point during her shift, the gun had fallen out of the handbag. At the time, Metro had a policy prohibiting employees from bringing weapons on board Metro buses, and Metro fired Johnson for misconduct.

Subsequently, the Employment Security Department denied Johnson's request for unemployment compensation benefits. In a decision adopted by the Commissioner of the Employment Security Department, the administrative law judge held that Johnson's gross negligence in failing to discover the weapon violated Metro's reasonable no-weapons policy and constituted disqualifying misconduct. Johnson filed a timely petition for review with the King County Superior Court.

The Superior Court reversed the agency decision, finding two errors of law. First, the trial court noted that for an employee to be disqualified for unemployment compensation benefits because of misconduct, the employee must have violated a reasonable rule. *Macey*, at 319. The trial court

held that Johnson's misconduct could not have been disqualifying because under *Cherry v. Municipality of Metro Seattle*, 57 Wn. App. 164, 787 P.2d 73 (1990), Metro's rule prohibiting employee possession of firearms was not reasonable. Second, the trial court held that a single instance of gross negligence may not constitute disqualifying misconduct under *Macey*, which it interpreted as requiring either intentional conduct or repeated incidents of negligence. *Macey*, at 318-19. Metro and the Employment Security Department appeal.

We initially decide whether Metro's rule prohibiting employee on-duty possession of firearms is reasonable.

■ The trial court concluded that Metro's no-weapons policy was unreasonable under the Court of Appeals' decision *Cherry v. Municipality of Metro Seattle, supra,* which held that the Washington Uniform Firearms Act preempted municipal regulation of firearms. *Cherry*, at 168. However, since the trial court's decision, *Cherry* has been reversed by the Washington State Supreme Court. *Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 803, 808 P.2d 746 (1991). The Supreme Court held that the Washington Uniform Firearms Act preempted "laws of application to the general public," but did not preempt municipal employers' authority "to regulate or prohibit a municipal employee's possession of firearms while on the job . . .". *Cherry*, 116 Wn.2d at 801, 803. In light of the Supreme Court's decision in *Cherry*, the respondent concedes that Metro's rule prohibiting employee on-duty possession of firearms is reasonable.

We next consider whether a single instance of grossly negligent job performance constitutes work-related misconduct which disqualifies an individual from receiving unemployment compensation benefits under RCW 50.20.060.

■ RCW 50.20.060(1) provides that unemployed workers are disqualified from receiving unemployment compensation benefits if they are terminated for misconduct. However, misconduct which justifies an employee's discharge does not necessarily disqualify the employee from unemployment

compensation. *Ciskie v. Department of Empl. Sec.*, 35 Wn. App. 72, 76-77, 664 P.2d 1318 (1983). In defining "disqualifying misconduct", we are guided by the language of the Employment Security Act, which provides that unemployment compensation funds are "to be used for the benefit of persons *unemployed through no fault of their own*". (Italics ours.) RCW 50.01.010. Thus, the test is whether it can be said that one became unemployed through no fault of their own. Misconduct which disqualifies an employee from unemployment compensation benefits is fault based.

Pursuant to RCW 50.20.060, the Supreme Court has summarized the general criteria for disqualifying misconduct. *See Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 752 P.2d 372 (1988). For an employee to be disqualified for unemployment compensation, three criteria must be met: (1) The rule proscribing the misconduct must be reasonable; (2) the employee's conduct must be connected with the work; and (3) the employee's conduct must violate the rule. *Macey*, at 319. Within this summarization of the rule, the court did not discuss the mental state required for disqualifying misconduct.

■ However, the court did address the mental state required in its overall analysis of the issue. The court clearly articulated that "intentional conduct which also satisfies the other criteria will be [disqualifying]." *Macey*, at 318. The court also concluded that a single instance of ordinary negligence is not disqualifying but that repeated negligent acts in the context of employment "after notice or warnings or in violation of established [employment] rules" may be disqualifying misconduct. *Macey*, at 318. Thus, intentional misconduct *is* disqualifying; a single instance of ordinary work-related negligence *is not* disqualifying; and repeated instances of ordinary work-related negligence *may be* disqualifying.

The *Macey* court's conclusions are consistent with the legislative intent noted within the Employment Security Act, which is to provide unemployment benefits to those who are discharged for reasons unrelated to fault. *See* RCW

50.01.010. In essence, under *Macey*, employee misconduct which is fault based is disqualifying, and employee misconduct which is so slight or singular that it cannot be considered fault based is not disqualifying. Thus, although *Macey* did not specifically address the issue of grossly negligent job performance, we conclude that a single instance of such conduct can disqualify an employee from unemployment compensation if it is of such a magnitude that the employee is considered to be at fault.

We next address whether the administrative law judge erred in concluding as a matter of law that Johnson's on-duty failure to be aware of the presence of her gun amounted to grossly negligent job performance.[1]

■ In reviewing the administrative agency's decision, we stand in the same position as the trial court. *Macey*, at 312 (citing *Farm Supply Distribs., Inc. v. Utilities & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974)). "Review is on the entire record." *Macey*, at 312. "Issues of law are reviewed under the error of law standard, in which the reviewing court may 'essentially substitute its judgment for that of the administrative body.'" *Henson v. Employment Sec. Dep't*, 113 Wn.2d 374, 377, 779 P.2d 715 (1989) (quoting *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983)). Thus, this court may review Johnson's misconduct to determine whether the ALJ correctly held it to constitute grossly negligent job performance. However, we accord the agency's legal conclusion substantial weight because the issue falls within its expertise. *Macey*, at 313.

■ The ALJ concluded that, in the employment context, Johnson was grossly negligent for her failure to be aware that the gun was in her possession while she was at work.

---

[1] We do not focus on Johnson's off-duty failure to notice the absence of her weapon in the 2 to 3 days following her Friday shift. Johnson's unintentional off-duty failure occurred after violation of the employer rule, was conduct not associated with her work, and could not constitute disqualifying misconduct under *Nelson v. Department of Empl. Sec.*, 98 Wn.2d 370, 374-75, 655 P.2d 242 (1982) as adopted by *Macey*. *See Macey*, at 314-15, 319.

Negligence is the failure to be aware of a substantial risk of which a reasonable person would have been aware. *In re Rentel*, 107 Wn.2d 276, 284, 729 P.2d 615 (1986) (citing *ABA Standards for Imposing Lawyer Sanctions*, at 6 (1986)). Failure to be aware that she carried the gun to work in her purse is illustrative of the degree of Johnson's misconduct. Even though Johnson got into her handbag at least once during her shift, she did not notice the gun. In addition, Johnson failed to be aware that the gun came out of her handbag, failed to be aware that the gun was on the floor beside her, and failed to be aware that she left the gun on the bus. Under the facts presented here, a person acting reasonably should have observed the presence of the gun. In light of Johnson's complete failure to be aware of the presence of her loaded gun, we cannot say that the ALJ's finding was an error of law.

Finally, we address whether Johnson's grossly negligent job performance was of a magnitude which disqualified her from unemployment compensation benefits.

■ We conclude that it did. Carrying a loaded gun onto a city bus and leaving the weapon on the bus at the end of her shift presented a clearly dangerous situation. A gun is a dangerous instrumentality for which strict liability is often imposed. We cannot say that Johnson's possession and loss of a loaded gun on a city bus caused her to be unemployed through no fault of her own and justified the payment of unemployment compensation. Johnson's failure to be aware of the presence of the gun in her purse and her failure to be aware that the gun came out of the purse, compounded by her failure to be aware that the gun was lying on the floor by her purse when she left the bus, amounts to grossly negligent job performance of a magnitude which disqualified her from unemployment compensation.

The order of the trial court is reversed.

GROSSE, C.J., and WEBSTER, J., concur.