242 P.3d 909 (2010)
SKAGIT COUNTY PUBLIC HOSPITAL DISTRICT NO. 1, d/b/a Skagit Valley Medical Center; Skagit County Public Hospital District No. 2, d/b/a Island Hospital, Appellants,
v.
STATE of Washington DEPARTMENT OF REVENUE, Respondent.
Nos. 39457-0-II, 39658-1-II.
Court of Appeals of Washington, Division 2.
November 9, 2010.
*911 Carla Marie Dewberry, Garvey Schubert Barer, Seattle, WA, for Appellant.
David M. Hankins, Atty. General's Ofc./Revenue Division, Peter B. Gonick, Asst. Atty. Gen. Revenue Division, Olympia, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Skagit County Public Hospital District No. 1, d/b/a Skagit Valley Medical Center *912 (Skagit Valley) and Skagit County Public Hospital District No. 2, d/b/a Island Hospital (Island), collectively "the hospitals," appeal from the Board of Tax Appeals (Board) orders requiring them to pay, rather than deduct, business and occupation (B & O) tax under RCW 82.04.220 on amounts received from Medicare beneficiaries[1] and their secondary insurers (Medigap insurers) for Medicare beneficiaries' copayments and deductibles. We hold that under the plain language of former RCW 82.04.4297 (1988), Medicare beneficiaries and Medigap insurers are not instrumentalities of the United States when they pay patient copayments and deductibles. We also hold that Skagit Valley was not entitled to sovereign immunity and any delays were not for the Department of Revenue's (Department) sole convenience. We affirm the Board's decision.

FACTS

I. Medicare Program
¶ 2 Medicare is an insurance program that provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care for individuals over 65 and those who meet certain conditions. 42 U.S.C. § 1395c. Medicare coverage is available through what are called Medicare part A and B. 42 U.S.C. §§ 1395c-1395w-5. Under both parts, Medicare pays a predetermined amount for covered services provided to Medicare beneficiaries. Regardless of a hospital's standard charges, Medicare prohibits the enrolled hospital provider from charging and receiving more than the operating and capital costs of providing the Medicare beneficiary's inpatient care. 42 C.F.R. § 412.2; 42 C.F.R. § 489.21 (2010).
¶ 3 Medicare does not cover all costs associated with these services. Most pertinently to this case, Medicare beneficiaries pay deductibles and 20 percent coinsurance (copayments) for most services and equipment. 42 U.S.C. § 1395e(b)(1), (2); 42 U.S.C. § 1395l(a)(1), (b). To help cover these costs, Medicare beneficiaries may purchase Medigap plans, which offer gap coverage under one of a fixed number of options specified and regulated by the federal government. 42 U.S.C. § 1395ss(g)(1); 42 C.F.R. 403.200(a) (2010).
¶ 4 The hospitals contract with Medicare to provide services to Medicare beneficiaries. When the hospitals provide services to Medicare beneficiaries, they send a bill to the Centers for Medicare and Medicaid Services (CMS), the governing body for the Medicare program. Regardless of the amount of the hospital bills, CMS sends back remittance advice, which identifies the amount of money (1) Medicare will pay for the claim and (2) the hospital can charge the Medicare beneficiary. The amount the Medicare beneficiary owes is a copayment and/or deductible. The Medicare beneficiary and/or the Medigap insurer pays the hospital directly for amounts owed for copayments and deductibles. The hospitals deposit in their bank accounts any amounts received for copayments and deductibles and do not transfer them to Medicare.
¶ 5 Some Medicare beneficiaries or Medigap insurers fail to pay their copayments and deductibles, and these debts become "bad debts." Board of Tax Appeals Record (BTAR) (Island) at 289. If the hospitals comply with Medicare regulations and first seek payment from patients, Medicare pays a portion of the bad debt. The amounts Medicare pays hospitals for bad debts are discretionary and depend on Medicare's budget each year.

II. Audits
¶ 6 The Department conducted six audits of Skagit Valley for tax years 1993, 1994-96, 1997, 1998, 1999, and 2000. The Department audited Island for the tax years 1997 through 2000. The Department found that the hospitals failed to pay B & O taxes on copayment and deductible amounts received from Medicare beneficiaries and Medigap insurers for each of the tax years and it assessed unpaid taxes and interest. Skagit Valley had use of those funds during the audited periods.

*913 III. Appeal
¶ 7 The hospitals appealed to the Department's appeals division and the Department issued a determination denying the appeals. The hospitals then appealed to the Board.
¶ 8 In Island's appeal, the Department moved for summary judgment, which the Board granted. In Skagit Valley's appeal, the Department issued formal findings of fact and conclusions of law following a hearing. In both instances, the Board found that the Medicare deductibles and copayments were not amounts received from the United States or any instrumentality thereof. The Board found:
Although patients have legal rights in accordance with the statutory provisions of Medicare, it is not a "contractual" relationship where the patients are agreeing to pay the deductibles and co-payments for Medicare. The patients are making the payments for themselves. The patients' insurers are making payment on behalf of the patient (patients voluntarily pay for supplemental insurance policies with their funds), not Medicare. The statutory scheme requiring a Medicare patient to pay a deductible or co-payment makes the patients' payment their individual responsibility, not Medicare's responsibility.
I Administrative Record (AR) (Skagit Valley) at 28; BTAR (Island) at 26. In addition, the Board found that the Department properly imposed pre- and post-assessment interest on Skagit Valley under RCW 82.32.105(3)(b) because the Department had not extended the assessment due dates for its own convenience. The hospitals sought review from the superior court, which affirmed.

ANALYSIS

I. B & O Deduction  Instrumentalities of the United States

A. Standard of Review
¶ 9 We review the Board's decision, not the trial court's decision. Dep't of Revenue v. Sec. Pac. Bank of Wash. Nat'l Ass'n, 109 Wash.App. 795, 802-03, 38 P.3d 354 (2002). On review of an agency order under the Administrative Procedure Act, chapter 34.05 RCW, we will reverse an agency decision based on an erroneous interpretation or application of the law. RCW 34.05.570(3)(d). We review de novo decisions based on interpretation of the law. Advanced Silicon Materials, LLC v. Grant County, 156 Wash.2d 84, 89, 124 P.3d 294 (2005). We accord substantial weight to the agency's interpretation of the law, although we may substitute our judgment for the agency's. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 728, 818 P.2d 1062 (1991). As the challenging party, the hospitals bear the burden of demonstrating an invalid agency action. RCW 34.05.570(1)(a); DaVita, Inc. v. Dep't of Health, 137 Wash.App. 174, 180, 151 P.3d 1095 (2007).

1. Skagit Valley
¶ 10 We review the findings of fact in Skagit Valley's case under the substantial evidence standard of RCW 34.05.570(3)(e). We uphold findings supported by evidence sufficient to persuade a fair-minded person of the declared premise's truth. Heinmiller v. Dep't of Health, 127 Wash.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995), cert. denied, 518 U.S. 1006, 116 S.Ct. 2526, 135 L.Ed.2d 1051 (1996). We view the evidence in the light most favorable to the party who prevailed in the administrative forum. City of Univ. Place v. McGuire, 144 Wash.2d 640, 652, 30 P.3d 453 (2001). Accordingly, we accept the fact finder's determinations of the weight given to reasonable but competing inferences. McGuire, 144 Wash.2d at 652, 30 P.3d 453; Sec. Pac. Bank, 109 Wash.App. at 803, 38 P.3d 354.

2. Island
¶ 11 When reviewing an order granting summary judgment, we engage in the same inquiry as the Board. Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321, review denied, 136 Wash.2d 1016, 966 P.2d 1277 (1998). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome *914 of the litigation depends, in whole or in part. Morris v. McNicol, 83 Wash.2d 491, 494, 519 P.2d 7 (1974). We consider all reasonable inferences in the light most favorable to the nonmoving party. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). The parties do not dispute any issues of fact.

B. Plain Language
¶ 12 The hospitals argue that they may deduct from their gross income subject to the B & O tax the Medicare copayments and deductibles received from Medicare beneficiaries and Medigap insurers because the hospitals receive these amounts from an instrumentality of the United States.
¶ 13 The State imposes a B & O tax on every person for the act or privilege of engaging in business activities, which is measured by the business's gross income. RCW 82.04.220. The legislature intended to impose the B & O tax on virtually all business activities carried out within the state. Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 149, 3 P.3d 741 (2000). Unless an exemption or deduction applies, a taxpayer owes B & O tax on all income received for the rendition of services, including services related to health care. Wash. Imaging Servs., LLC v. Dep't of Revenue, 153 Wash. App. 281, 294, 222 P.3d 801 (2009), review granted, 168 Wash.2d 1031, 230 P.3d 1062 (2010). We construe tax deduction statutes narrowly. United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 360, 687 P.2d 186 (1984). We construe any ambiguity strictly, but fairly, against the taxpayer. Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n, 72 Wash.2d 422, 429, 433 P.2d 201 (1967). The taxpayer bears the burden of proving that it qualifies for a tax deduction. Group Health, 72 Wash.2d at 429, 433 P.2d 201.
¶ 14 Washington's B & O tax applies to health care services. See RCW 82.04.322; former RCW 82.04.4297; RCW 82.04.431 (allowing for B & O exemptions and deductions for various aspects of health services). But,
[i]n computing tax there may be deducted from the measure of tax amounts received from the United States or any instrumentality thereof or from the state of Washington or any municipal corporation or political subdivision thereof as compensation for, or to support, health or social welfare services rendered by a health or social welfare organization or by a municipal corporation or political subdivision.
Former RCW 82.04.4297.[2]
¶ 15 The hospitals argue that the plain language meaning of instrumentality as used in former RCW 82.04.4297 includes deductibles and copayments from Medicare beneficiaries and Medigap insurers. The Department argues that the hospitals are not entitled to deduct the disputed revenue because they received the money not from the government but from patients and private insurance companies. We agree with the Department.
¶ 16 We review questions of law, including statutory construction, de novo. City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). When called on to interpret a statute, our fundamental obligation is to give effect to the Legislature's intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, we first look to its plain language. Campbell & Gwinn, LLC, 146 Wash.2d at 9, 43 P.3d 4. If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction. Campbell & Gwinn, LLC, 146 Wash.2d at 9-10, 43 P.3d 4. The plain meaning of a statute may be discerned "from all that the Legislature has said in the *915 statute and related statutes which disclose legislative intent about the provision in question." Campbell & Gwinn, 146 Wash.2d at 11, 43 P.3d 4. Absent ambiguity or a statutory definition, we give the words in a statute their common and ordinary meaning. Garrison v. Wash. State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976). To determine the plain meaning of an undefined term, we may look to the dictionary. Garrison, 87 Wash.2d at 196, 550 P.2d 7. The parties agree that based on the dictionary definition of instrumentality, the plain language of former RCW 82.04.4297 controls.
"Instrumentality" is the
quality or state of being instrumental: a condition of serving as an intermediary ... something by which an end is achieved ... something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body.
Webster's Third New Int'l Dictionary 1172 (3d ed.2002). "Instrumentality" is also defined as "1. A thing used to achieve an end or purpose. 2. A means or agency through which a function of another entity is accomplished, such as a branch of a governing body." Black's Law Dictionary 870 (9th ed.2009).
¶ 17 The hospitals contend that "an instrumentality is a person or an entity used to accomplish the ends of another." Br. of Appellant (Skagit Valley) at 14; Br. of Appellant (Island) at 9. The hospitals insist that Medicare's "end" is compensating them for costs they incur while caring for Medicare beneficiaries. Br. of Appellant (Skagit Valley) at 14; Br. of Appellant (Island) at 9. Medicare, they assert, uses payment from Medicare beneficiaries and Medigap insurers as the means to accomplish this end. The Department argues that when considering the whole definition of "instrumentality," it becomes clear that an "instrumentality of a government is not merely anything that somehow assists in achieving a government purpose, but must be more closely associated with the government itself so as to be considered a part of it." Br. of Resp't (Skagit Valley) at 19; see also Br. of Resp't (Island) at 11. We agree with the Department.
¶ 18 Both definitions of instrumentality relate to the government. In both definitions, it is clear that an instrumentality of the government must do more than assist the government. Instead, an instrumentality must accomplish a government function and must be so intimately tied to the government as to be a part, organ, or subsidiary branch. Webster's, supra at 1172; Black's, supra at 870.[3] Stated another way, the hospitals had to show that (1) Medicare beneficiaries and Medigap insurers accomplished a Medicare function when they paid copayments and deductibles; and (2) by doing so, they acted as a part, organ, or subsidiary branch of Medicare. Thus, an instrumentality of the United States must do more than help the United States accomplish some end.[4] The hospitals failed to make both showings.
¶ 19 Medicare's function is not to compensate the hospitals, as they contend. Instead, Medicare "provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care." 42 U.S.C. § 1395c. Thus, Medicare is concerned with costs to its beneficiaries, not the hospitals. Payments Medicare makes directly to the hospitals accomplish this goal by reducing costs to Medicare beneficiaries for the enumerated services. Copayments and deductibles do not help provide protection *916 against health care costs but, rather, are health care costs. Medicare beneficiaries and Medigap insurers therefore do not accomplish a Medicare function when they pay these amounts.
¶ 20 In addition, as shown below, Medicare beneficiaries and Medigap insurers do not act on behalf of Medicare when they pay copayments and deductibles such that they could be considered a part, organ, or subsidiary branch of the agency. Medicare beneficiaries and Medigap insurers instead act on behalf of the Medicare beneficiary. We examine the facts of each hospital in turn.

1. Skagit Valley
¶ 21 In finding of fact 2, the Board found that Medicare beneficiaries are personally obligated to pay their deductibles and copayments. In finding of fact 3, the Board found that Medicare patients voluntarily pay for Medigap policies, which cover the patients' obligation to pay deductibles and copayments.
¶ 22 Initially, the Department argues that Skagit Valley waived its assignment of error to findings of fact 2 and 3 by not presenting any argument. An appellant waives an assignment of error if it fails to present argument or citation to authority in support of that assignment. Bercier v. Kiga, 127 Wash.App. 809, 824, 103 P.3d 232 (2004), review denied, 155 Wash.2d 1015, 124 P.3d 304 (2005). Skagit Valley argues that Medicare regulations demonstrate that Medicare beneficiaries and Medigap insurers are acting at Medicare's direction. Skagit Valley did not waive its assignment of error as to findings of fact 2 and 3.
¶ 23 Substantial evidence supports findings of fact 2 and 3. A patient admitted to Skagit Valley signs a form agreeing that "he or she is responsible for any health insurance deductibles and coinsurance." Clerk's Papers (CP) at 176. The patient authorizes that "benefits [are to] be made to [the hospital] on the patient's behalf." V AR (Skagit Valley) at 820. Skagit Valley bills the responsible party, either the Medicare beneficiary or the Medigap insurer, for any deductibles or copayments due. Skagit Valley's bill does not state that the patient or Medigap insurer is acting as an agent of Medicare, and nothing the hospital receives from Medigap insurers states that the Medigap insurer is acting on Medicare's behalf. The patients and/or their Medigap insurers pay the copayments or deductibles personally, and the hospital deposits that money in its bank account.
¶ 24 In addition, Medicare patients personally purchase Medigap policies to cover copayments and deductibles. Medicare does not pay for supplemental insurance products, nor require its purchase. At the Board hearing, Skagit Valley agreed that Medigap insurance companies are not government agencies. Substantial evidence supports findings of fact 2 and 3.
¶ 25 The findings of fact support the Board's conclusions of law 1, 2, and 3, that (1) Medicare beneficiaries and Medigap insurers are not instrumentalities of Medicare, (2) the beneficiaries make the payments for themselves, and (3) the payments are not Medicare's responsibility. Medicare beneficiaries and Medigap insurers do not accomplish a government function by paying copayments and deductibles because they are not doing Medicare's work. Medicare beneficiaries and Medigap insurers cannot act on Medicare's behalf. Medicare beneficiaries instead satisfy personal liabilities, and Medigap insurers work on behalf of their insureds. Medicare is not liable for its beneficiaries' copayments and deductibles.
¶ 26 Regulation of Medigap insurers does not make the insurers instrumentalities of the United States, as the hospital contends. The government regulates many types of insurance, yet those companies remain independent businesses. In addition, despite regulation, Medigap insurers still act on behalf of their insured, not Medicare, when paying copayments and deductibles.
¶ 27 Further, that Medicare chooses to pay a portion of a hospital's bad debts does not make Medicare beneficiaries and their Medigap insurers arms or organs of the government. Medicare beneficiaries and their Medigap insurers have no part in the bad debt payments and they do not direct the payments to be made. That Medicare pays some portion of the hospital's bad debts does *917 not make Medicare beneficiaries and their Medigap insurers instrumentalities of the United States. Further, Skagit Valley was allowed to deduct amounts received from Medicare for the bad debts when calculating its B & O tax. The Board did not erroneously interpret or apply the law by concluding that Medicare beneficiaries and Medigap insurers are not instrumentalities of the United States.

2. Island
¶ 28 In granting the Department's summary judgment motion, the Board found that Medicare beneficiaries and their Medigap insurers are not agents or instrumentalities of the federal government under former RCW 82.04.4297.
¶ 29 Patients admitted to Island agree they are "financially responsible to the hospital for charges not paid under this agreement." BTAR (Island) at 299. The patient authorizes that benefits be paid to the hospital on the patient's behalf. In addition, if a patient fails to pay his or her bill, Island sends that bill to a collection agency.
¶ 30 Further, the Medicare Claims Processing Manual (Manual) states that providers agree "not to charge Medicare beneficiaries (or any other person acting on a beneficiary's behalf) for any service for which Medicare beneficiaries are entitled to have payment made on their behalf by the Medicare program." BTAR (Island) at 368-69 (emphasis added). The Manual permits providers to bill Medicare beneficiaries for deductibles and copayments. A provider also agrees to "refund as promptly as possible any money incorrectly collected from Medicare beneficiaries or from someone on their behalf." BTAR (Island) at 369 (emphasis added). Money "incorrectly collected" means any amount for covered services "that is greater than the amount for which the beneficiary is liable because of the deductible and coinsurance requirements." BTAR (Island) at 369 (emphasis added).
¶ 31 Medicare's Manual and Island's admissions form are consistent: Medicare beneficiaries are personally liable for their deductibles and copayments. Because Medicare beneficiaries satisfy personal debts when they or their Medigap insurers pay Island, they are not acting on Medicare's behalf. They are instead acting on their own behalves. Also, Medigap insurers act on behalf of beneficiaries, not Medicare. Also, as stated above, Medicare's coverage of bad debts and regulation of Medigap insurers do not make amounts received from private individuals and private companies "amounts received from" instrumentalities of the United States. Former RCW 82.04.4297.
¶ 32 We hold that under the plain language of former RCW 82.04.4297, Medicare beneficiaries and Medigap insurers do not act as instrumentalities of the United States when they pay Medicare beneficiaries' copayments and deductibles. The Department was entitled to judgment as a matter of law. CR 56(c). As such, the Board did not erroneously apply or interpret the law when it upheld the Department's final determination. RCW 34.05.570(3)(d).

II. Interest and Penalties
¶ 33 Skagit Valley alone argues that it is not subject to interest on the Department's assessments.
¶ 34 "If upon examination of any returns or from other information obtained by the department it appears that a tax or penalty has been paid less than that properly due, the department shall assess against the taxpayer such additional amount found to be due and shall add thereto interest on the tax only." RCW 82.32.050(1).[5]
¶ 35 Skagit Valley received six assessments in 1997, 1998, 2001, 2002, 2003, and 2004, respectively, but did not pay the assessments until 2004. In some years, the Department requested a waiver of the statute of limitations, which Skagit Valley denied. *918 Skagit Valley felt that many of the assessments contained incorrect taxable amounts. For instance, the 1993 and 1994-96 assessments contained income numbers that did not match Skagit Valley's records. The 1997 assessment contained tax on a number of items for which Skagit Valley had already paid tax. Skagit Valley felt that the Department had come against the statute of limitations period and "cushion[ed]" the assessments to buy time. CP (Skagit Valley) at 136.[6] Skagit Valley appealed each assessment because of factual disputes and asked for extensions or holds on all assessments.
¶ 36 The Department revised every assessment after each of Skagit Valley's appeals. For each tax period, the Department lowered substantially the tax amount Skagit Valley owed. For the 1998 taxable period, for instance, the Department had initially assessed $322,000 in back taxes. The revised final assessment that Skagit Valley received six years later assessed only $161,000 in back taxes. Skagit Valley paid all the revised assessments in 2004 and adjusted amounts in 2007.
¶ 37 The Department waived interest for the 1993 audit because the delay had been for its convenience. But the Department refused to waive interest for the remaining tax periods because any delay was for Skagit Valley's sole convenience.

A. Sovereign Immunity
¶ 38 Before the Board, Skagit Valley argued that as a municipal corporation, it was entitled to sovereign immunity and thus the Department could not impose interest on the assessments. The Board rejected Skagit Valley's sovereign immunity argument, finding in conclusion of law 6 that chapter 82.32 RCW permitted the Department to impose interest on municipal corporations.
¶ 39 Skagit Valley insists that it shares in the State's sovereign immunity and is not subject to interest absent statutory authorization. Initially, the Department argues that sovereign immunity does not apply here because that doctrine prevents lawsuits in court against the government and the Department did not ask a court to impose interest on a judgment against Skagit Valley. The Department instead complied with statutory directives in adding interest to a tax assessment.
¶ 40 Sovereign immunity does not preclude interest on only judgments. The doctrine of sovereign immunity requires the State's consent before a court can hold it liable for interest on its debts. Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 455-56, 842 P.2d 956 (1993). Unpaid taxes are debts. See In re the Matter of Tops Shop'n Save, Inc., 78 Wash.2d 78, 81, 469 P.2d 920 (1970) (referring to "unpaid tax debts.").
¶ 41 But the Department correctly notes that sovereign immunity does not attach because Skagit Valley acted in its administrative capacity and not on the State's behalf. Municipal corporations, as creatures of the state, derive their authority and powers from the state's legislative body. Campbell v. Saunders, 86 Wash.2d 572, 574-75, 546 P.2d 922 (1976). In explaining the distinction between a municipal corporation's governmental and proprietary functions, the Supreme Court stated:
"Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them solely for their own benefit in their corporate capacity, whether performed for gain or not, and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. They have no sovereignty of their own, they are in no sense sovereign per se."
Kelso v. City of Tacoma, 63 Wash.2d 913, 916-17, 390 P.2d 2 (1964) (quoting City of Seattle ex rel. Dunbar v. Dutton, 147 Wash. *919 224, 231, 265 P. 729 (1928)). A municipal corporation does not have sovereign immunity when it operates under its statutory authority for its own benefit. Hutton v. Martin, 41 Wash.2d 780, 784, 252 P.2d 581 (1953). Skagit Valley, the Department insists, was exercising the administrative powers conferred on, or permitted to, it solely for its own benefit in its corporate capacity. We agree.
¶ 42 Public hospital districts are municipal corporations. RCW 70.44.010. One of the duties a public hospital district must undertake is "to provide hospital and other health care services for residents of" the public hospital district. RCW 70.44.060(3). Skagit Valley received the amounts at issue in exchange for providing hospital and other health services. Skagit Valley was operating a public hospital district under statutory authority and should be assessed interest on its failure to pay taxes. In addition, Skagit Valley acted for its own benefit. Skagit Valley deposited the money from Medicare beneficiaries and Medigap insurers into its bank account. Finally, Skagit Valley was not representing the State when billing Medicare beneficiaries and Medigap insurers.[7] There is no evidence in the record that the State undertook efforts to collect bad debts. Instead, that duty fell to Skagit Valley. Sovereign immunity does not apply and the Department had authority to impose interest on Skagit Valley's assessments.
¶ 43 In conclusion, we hold that sovereign immunity does not apply because Skagit Valley acted within its statutory authority, acted for its own benefit, and engaged in administrative duties. Kelso, 63 Wash.2d at 916-17, 390 P.2d 2.

B. Waiver by Department
¶ 44 Skagit Valley also argues that the Department must waive the interest imposed on the assessments.

1. Verities on appeal
¶ 45 The Department is correct that finding of fact 7 is a verity on appeal. But the Department is incorrect; finding of fact 4 is not a verity on appeal.[8] Skagit Valley did not assign error to findings of fact 4 and 7, so they would normally be a verity on appeal. Harris v. Urell, 133 Wash.App. 130, 137, 135 P.3d 530 (2006), review denied, 160 Wash.2d 1012, 161 P.3d 1026 (2007). We will waive technical violations of RAP 10.3(g) where the appellant's brief makes the nature of the challenge clear. Harris, 133 Wash.App. at 137, 135 P.3d 530. Skagit Valley sets out in its brief a clear argument that it is entitled to a waiver of interest because of circumstances beyond its control. But Skagit Valley did not present any argument on equitable estoppel. Accordingly, finding of fact 4 is not a verity on appeal, but finding of fact 7 is a verity.
¶ 46 The Department is also correct that Skagit Valley waived its assignment of error to findings of fact 5 and 10[9] by not presenting any argument. Skagit Valley fails to explain how sufficient evidence does not support the Board's findings regarding the timeline for when it paid the assessments, *920 nor does it explain how the record was sufficient to determine how much of each extension was for Skagit Valley's convenience or the Department's. Skagit Valley waived its assignment of error as to findings of fact 5 and 10. Bercier, 127 Wash.App. at 824, 103 P.3d 232.

2. Department's sole convenience
¶ 47 Skagit Valley argues that the Department's "unreasonable dalliance in completing the audits" caused Skagit Valley's delayed assessment payments. Br. of Appellant (Skagit Valley) at 27. Skagit Valley argues that the Department's delays were for its own benefit and do not justify burdening the hospital or Skagit County taxpayers. The Department argues that Skagit Valley did not meet its burden to show it is entitled to an interest waiver.
¶ 48 The Department shall waive or cancel interest imposed under chapter 82.32 RCW if (1) the failure to timely pay the tax was the direct result of written instructions given the taxpayer by the department or (2) the extension of an assessment's due date was not at the taxpayer's request and was for the Department's sole convenience. RCW 82.32.105(3). Substantial evidence supports the Board's findings of fact that Skagit Valley did not meet these conditions for an interest waiver. RCW 34.05.570(3)(e).
¶ 49 Finding of fact 6. In finding of fact 6, the Board found that the Department had advised Skagit Valley of its rights to stop interest accrual by paying the initial assessments by their due dates, but chose to delay payment for its own reasons. When the Department granted Skagit Valley extensions in 1999, it informed the hospital that "[i]t will be necessary for the taxpayer to pay additional interest on any amounts so extended and found to be due." I AR (Skagit Valley) at 79, 80. The Department also stated that any new amount due would include interest. The Department issued similar letters following extensions in 2003. Also, the Department had informed the hospital in September 2001 that it could pay any "agreed to" amounts at any time. I AR (Skagit Valley) at 81. Finally, John Rapp, a field audit manager with the Department, testified before the Board that the Department at several points during an audit advises taxpayers that they can pay the assessment at any time. Rapp also stated that the Department advises taxpayers that interest accrues until the taxpayer pays the assessment.
¶ 50 Further, Skagit Valley chose not to pay the assessments so that it could reconcile its records with the assessments. In addition, Skagit Valley requested that the Department place holds on all assessments. Substantial evidence supports finding of fact 6.
¶ 51 Finding of fact 8. In finding of fact 8, the Board found that Skagit Valley unreasonably relied on the Department's delays in providing revised assessments as reason to delay payment. Skagit Valley's certified public accountant testified before the Board that he believed that when the Department placed the audits on hold, the hospital and Department had a mutual understanding. Such reliance was unreasonable because the statute explicitly states that the Department shall waive interest when the taxpayer failed to timely pay the tax because of written instructions the Department gave the taxpayer. RCW 82.32.105(3)(a). There is no evidence Skagit Valley received any such written instruction. Substantial evidence therefore supports finding of fact 8.
¶ 52 Finding of fact 9. In finding of fact 9, the Board found that any partial waiver would require it to micromanage the Board. Skagit Valley is correct that insufficient evidence supports this finding. The Department did not produce any evidence showing that it would be cumbersome to waive the interest. But an erroneous finding of fact not materially affecting the conclusions of law is not prejudicial and does not warrant reversal. State v. Caldera, 66 Wash. App. 548, 551, 832 P.2d 139 (1992). The remaining findings of fact support the Board's conclusion of law, so finding of fact 9 is not prejudicial.
¶ 53 These findings of fact support the Board's conclusion of law 9, that Skagit Valley was not entitled to waiver of interest under RCW 82.32.105(3)(b). These findings *921 show that all delays in paying the assessments were for Skagit Valley's convenience. The Department did not request any delay.

3. Circumstances Beyond the Taxpayer's Control
¶ 54 RCW 82.32.105(1) also does not entitle Skagit Valley to a waiver of interest. If the Department finds that a taxpayer's failure to pay any tax by the due date was the result of circumstances beyond the taxpayer's control, the Department shall waive or cancel any penalties imposed under chapter 82.32 RCW with respect to such tax. RCW 82.32.105(1). RCW 82.32.105(1) does not apply to waiver of interest, which Skagit Valley seeks, only waiver of penalties, which Skagit Valley has not sought. RCW 82.32.105(1) does not apply. The Board did not commit an error of law by concluding that Skagit Valley was not entitled to a waiver of interest under RCW 82.32.105(1). RCW 34.05.570(3)(d).
¶ 55 In conclusion, we hold that Skagit Valley is not entitled to waiver of interest because any delay in payment was at its request and for its sole convenience.

ATTORNEY FEES
¶ 56 The hospitals request attorney fees and costs on appeal under RAP 14.2 and 18.1. Because the hospitals have not substantially prevailed, we deny their request. RAP 14.2.
¶ 57 The Board of Tax Appeals' orders are affirmed.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] A "medicare beneficiary" means an individual who is entitled to benefits under Medicare's part A or part B. 42 U.S.C. § 1395a(b)(5)(A).
[2] In 2001, the legislature amended former RCW 82.04.4297 to clarify that "amounts received from" included amounts received from a nonprofit hospital, a public hospital that is a managed care organization, or any other entity that is under contract to manage health care benefits for Medicare or other government health care plans. Laws of 2001, 2d Spec. Sess., ch. 23, § 2. In 2002, the legislature deleted the 2001 amended language and created a new subsection stating "The deduction authorized by this section does not apply to amounts received from patient copayments or patient deductibles." Laws of 2002, ch. 314, §§ 2 & 3 (§ 2 codified as RCW 82.04.4311).
[3] The hospitals argue that because their definition of "instrumentality" comes from the "first and most accepted entry" in the dictionary, their definition prevails. Reply Br. (Skagit Valley) at 8; Reply Br. (Island) at 6. The hospitals appear to argue that we should ignore the dictionary's subsequent definitions of instrumentality to the extent they are unfavorable to the hospitals. The hospitals fail to cite any authority to support this logic and therefore waive the argument. Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991) ("In the absence of argument and citation to authority, an issue raised on appeal will not be considered.").
[4] This interpretation of instrumentality is consistent with former RCW 82.04.4297 as a whole. As the Department notes, the statute also permits deductions for amounts received from the State and its political subdivisions. This shows that the legislature intended to apply the deduction to amounts received from governments and those carrying out government functions.
[5] The legislature has amended RCW 82.32.050 several times during the taxable period, but the quoted portion of subsection (1) remains unchanged. See Laws of 2008, ch. 181, § 501; Laws of 2007, ch. 111, § 106; Laws of 2003, ch. 73, § 1; Laws of 1997, ch. 157, § 1; Laws of 1996, ch. 149, § 2.
[6] The Department could later amend the assessment to include other amounts as long as the amended assessment did not go over the initial assessment amount.
[7] Skagit Valley incorrectly contends that because it was acting within its statutory authority, it is immune from interest on back taxes. As we stated above, Skagit Valley has sovereign immunity only when representing the State. Kelso, 63 Wash.2d at 916-17, 390 P.2d 2.
[8] Finding of fact 4 states: "The Hospital's argument that interest should be waived under RCW 82.32.105(1) ('circumstances beyond the taxpayer's control') is untimely because it was made for the first time in the Hospital's Reply Brief." I AR (Skagit Valley) at 34.

Finding of fact 7 states: "The Hospital's equitable estoppel argument is untimely because it was made for the first time in the Hospital's Reply Brief." I AR (Skagit Valley) at 34.
[9] Findings of fact 5 and 10 state:

5. The periods between the initial assessments and the Hospital's payments for the various audits vary: less than one month for the 2000 audit, one year for the 1999 audit, two years for the 1998 audit, three years for the 1997 [audit], and five years for the 1994-1996 audit (which included both a short extension requested by the Hospital, followed by a request to put that audit on hold in February of 1999).
. . . .
10. The record is insufficient to permit the Board to determine how much of the extension was either at the request of the taxpayer or for the sole discretion of the Department.
I AR (Skagit Valley) at 34-35.