112 P.3d 536 (2005)
Sammy BARKER, Appellant,
v.
EMPLOYMENT SECURITY DEPARTMENT OF the STATE OF WASHINGTON, Respondent.
No. 53792-0-I.
Court of Appeals of Washington, Division 1.
April 25, 2005.
Publication Ordered May 26, 2005.
*537 Kim Krummeck, Seattle, WA, for Appellant.
Masako Kanazawa, Asst. Atty General, Seattle, WA, for Respondent.
ELLINGTON, A.C.J.
¶ 1 Sammy Barker did not commit misconduct disqualifying him from unemployment benefits when he missed work because he was incarcerated for violating a no-contact order of which he was unaware. The Employment Security Department commissioner's decision to the contrary is reversed, and this matter is remanded for reinstatement of benefits.

Background
¶ 2 Sammy Barker began working for QFC in February 2000. Barker was transferred from a Mercer Island store to one in the University District in July 2002. Both stores have a policy that failure to attend work without first informing the store constitutes a voluntary quit. Shortly before his transfer, Barker received an oral reprimand for violating this policy after his girlfriend had thrown him out of the house and discarded his clothes in the street.
¶ 3 About the time of his transfer, Barker was separating from his girlfriend. On a Friday night, she gave him permission to come to her home and retrieve his belongings. She indicated she was seeking a no-contact order. Barker made one trip without incident, but after he returned for a second load, an argument ensued. Barker's girlfriend called police. By that time, the no-contact order had apparently been issued, and the police served Barker with the no-contact order and arrested him for violating it. Barker was taken to jail. He requested release on his own recognizance, but was *538 unsuccessful. His phone access was restricted to collect calls. Barker attempted to call QFC to inform the store of his anticipated absence, but his call was answered by an automated message stating that the number did not accept collect phone calls. Barker spent 14 days in jail.[1] He had no visitors, and could not reach anyone who could call QFC on his behalf because collect calls were blocked from his home phone and all of his friends used cell phones that did not accept collect calls. Barker asked to use a different phone, but was not permitted to do so.
¶ 4 Barker contacted QFC immediately upon his release from jail. He brought in proof of the reason for his absence, and was told to call later in order to be put on back on the schedule. But when he called, Barker was told his employment had been terminated for failing to attend work or notify QFC of his absence.
¶ 5 Barker applied for unemployment benefits. QFC contested Barker's eligibility on grounds that his failure to attend work or notify the store constituted a voluntary quit under its policy.[2] The Employment Security Department (ESD) denied Barker benefits on that basis. Barker appealed. A hearing was conducted before an administrative law judge, at which Barker and QFC store manager Dirk Heuser testified. The judge reversed the department decision and granted benefits, finding that Barker's absence and termination was "attributable to unanticipated circumstances," and that Barker "was not discharged for misconduct and is not disqualified from benefits as a result." Commissioner's Record (CR) at 64.
¶ 6 QFC petitioned for review to the ESD commissioner's office. The commissioner modified the administrative law judge's findings, set aside his conclusion, and found instead that Barker's "chosen course of action... caused his incarceration and rendered him unable to report for work as scheduled which, for purposes of unemployment benefit eligibility, constitutes misconduct." CR at 74. Barker appealed the commissioner's order to the superior court, which affirmed the order. Barker appeals.

Discussion
¶ 7 Standard of Review. In reviewing an administrative decision, we stand in the same position as the superior court and apply the appropriate standard of review directly to the administrative record. Penick v. Employment Security Dep't, 82 Wash.App. 30, 37, 917 P.2d 136 (1996); Snohomish County v. State, 69 Wash.App. 655, 664, 850 P.2d 546 (1993).
¶ 8 Relief from an agency decision will be granted when the agency has erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious. RCW 34.05.570(3). Factual findings are reviewed under the substantial evidence standard, under which there must be a sufficient quantum of evidence in the record to persuade a reasonable person of the truth of the declared premise. Penick, 82 Wash.App. at 37, 917 P.2d 136. To the extent the commissioner modifies or replaces findings by the administrative law judge, it is the commissioner's findings that are relevant for review. Albertson's Inc. v. Employment Sec. Dep't., et al, 102 Wash.App. 29, 35, 15 P.3d 153 (2000). Conclusions of law are reviewed under the error of law standard; we give great deference to the commissioner's factual findings and substantial weight to the agency's interpretation of the law. Penick, 82 Wash. App. at 37-38, 917 P.2d 136.
¶ 9 The determination of whether an employee's behavior constitutes misconduct is a mixed question of law and fact. Tapper v. Employment Security Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). In reaching this determination, we give the agency's factual findings the same level of deference to which they are entitled under any other circumstance, but the process of applying the law to the facts is a question of law subject to de novo review. Tapper, 122 Wash.2d at 403, 858 P.2d 494.
*539 ¶ 10 Under the Employment Security Act, an individual discharged "for misconduct connected with his or her work" is disqualified from benefits. RCW 50.20.060; Hamel v. Employment Sec. Dep't, 93 Wash. App. 140, 145, 966 P.2d 1282 (1998). The Act defines "misconduct" as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business." RCW 50.04.293. Therefore, to constitute "disqualifying misconduct," the employee's conduct must be both willful and harmful to the employer. Dermond v. Employment Sec. Dep't, 89 Wash.App. 128, 133, 947 P.2d 1271 (1997) (citing Galvin v. Employment Sec. Dep't, 87 Wash.App. 634, 641-43, 942 P.2d 1040 (1997)).
¶ 11 Barker does not argue on appeal that his failure to report for work did not harm QFC's business. The only issue is whether Barker willfully disregarded QFC's interest. "[A]n employee acts with willful disregard when he (1) is aware of his employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences." Hamel, 93 Wash.App. at 146-47, 966 P.2d 1282. "Mere incompetence, inefficiency, erroneous judgment, or ordinary negligence does not constitute misconduct for purposes of denying unemployment compensation." Dermond, 89 Wash.App. at 133, 947 P.2d 1271.
¶ 12 There is no question that Barker was aware of his employer's interest and that his unexpected absence was adverse to that interest. Barker contends, however, the commissioner's finding that he should have known that going to retrieve his belongings from his ex-girlfriend would lead to his incarceration and inability to report for work is unsupported by substantial evidence. We agree.
¶ 13 The State's argument in support of the commissioner's decision is based on the proposition that "Barker acted in willful disregard of QFC's interest by choosing to go to his girlfriend's house and fight with her on the day he was scheduled to work." Resp. Br. at 10 (emphasis added). We note that the commissioner's finding to that effect is not supported by evidence in the record. Instead, the evidence shows that Barker went to his ex-girlfriend's house on the night before his next scheduled shift. This detail is contained in Barker's responses to questions posed in the department's Factfinding Guide Sheet # D-1, which is part of the administrative record, and is nowhere contradicted. There, Barker explained, "I know I was scheduled to go to work on that Saturday, around July 20, 2002, but on Friday July 19, 2002 I went to jail." CR at 53. Even if Barker should have known that going to his ex-girlfriend's house might spark an argument, Barker had no reason to assume this would interfere with his ability to report for work the following day.
¶ 14 Barker fails to assign error to the commissioner's finding that he had gone to his ex-girlfriend's home on the day of his shift, however, so we therefore treat the finding as a verity. Tapper, 122 Wash.2d at 407, 858 P.2d 494. Nevertheless, the commissioner's finding that Barker should have known this would lead to his incarceration is unsupported by the record.
¶ 15 Although she mentioned something about a no-contact order, Barker's ex-girlfriend did not say that an order had been issued. Rather, she told Barker she was "going to get one," but invited him to come remove his things from her home. CR at 19. Barker did not know an order had been issued until he was served contemporaneous with his arrest for violating it. Barker had no reason to expect he would be arrested for violating an order of which he had no knowledge.[3]
*540 ¶ 16 The State argues, in a footnote, that Barker's failure to inform QFC of his inability to report for work independently supports a finding of willful disregard. We disagree. Barker attempted to comply with the store's policy by calling QFC from jail, but was restricted to collect calls. Although the store manager testified the store can accept collect calls, he had never actually received one. Barker made reasonable efforts to comply with QFC's policy.
¶ 17 Circumstances beyond an employee's control cannot form the basis for the conclusion that the employee acted in willful disregard of the employer's interests. Galvin, 87 Wash.App. at 644, 942 P.2d 1040. The commissioner erred by concluding Barker committed disqualifying misconduct.
¶ 18 Attorney Fees. Barker requests attorney fees under RCW 50.32.160, which "plainly provides for fees on appeal if the commissioner's decision is reversed." Albertson's, 102 Wash.App. at 47, 15 P.3d 153. Barker is entitled to reasonable attorney fees on appeal and is directed to comply with RAP 18.1.
¶ 19 Reversed and remanded for reinstatement of benefits.
WE CONCUR: COLEMAN and APPELWICK, JJ.
NOTES
[1] Barker was released soon after consulting with a lawyer, but nothing in the record indicates how the matter was ultimately resolved.
[2] Barker's availability for work was uncontested.
[3] For this reason, the parties' reliance upon Washington Employment Security Department commissioner decisions and cases from other states pertaining to absences due to intentional criminal activity is misplaced. See In re Dahn, Empl. Sec. Comm'r Dec.2d 833 (1992) (benefits denied for misconduct following incarceration for knowingly failing to comply with conditions of suspended sentence for statutory rape); In re Sanchez, Empl. Sec. Comm'r Dec.2d 801 (1988) (benefits denied for misconduct following incarceration for violating court orders and failing to pay fine from assault conviction); In re McCourry, Empl. Sec. Comm'r Dec. 894 (1972) (benefits reinstated despite incarceration for DUI because unrelated to work); Chamberlain v. Dep't of Employment Security, 136 Vt. 571, 396 A.2d 140 (1978) (benefits denied for misconduct following incarceration for breaking and entering); Hunt v. Gen. Elec. Co., 84 A.D.2d 622, 444 N.Y.S.2d 492 (1981) (benefits granted despite incarceration for body stealing because not connected to work); Medina v. Commonwealth Unemployment Comp. Bd., 55 Pa.Cmwlth. 323, 423 A.2d 469, 471 (1980) (benefits denied for misconduct following incarceration for assault because, "Certainly an employee who engages in criminal activity punishable by incarceration should realize that his ability to attend work may be jeopardized."); Stanton v. Missouri Div. of Employment Sec., 799 S.W.2d 202, 204-05 (Mo.Ct.App.1990) (benefits denied for misconduct because "appellant's knowing operation of an uninsured vehicle, with no driver's license, should have made appellant aware that he faced the possibility of further penalty if caught, which in turn could impact upon his employment"); Smith v. Am. Indian Chem. Dep. Diversion Project, 343 N.W.2d 43, 45 (Minn.Ct.App.1984) (illegal failure to pay speeding tickets held to constitute misconduct because it could not be considered ordinary negligence or inadvertence); Collins v. B & G Pie Co., 59 N.C.App. 341, 296 S.E.2d 809, 811 (1982) (willful probation violation causing incarceration constituted misconduct).