# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JEFF KIRBY and PUGET SOUND
SECURITY PATROL, INC.,

          Appellants,

v.

WASHINGTON STATE DEPARTMENT
OF EMPLOYMENT SECURITY,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 70738-8-I

DIVISION ONE

UNPUBLISHED

FILED: December 22, 2014

Cox, J. — An employee who is discharged for "misconduct connected with his or her work" is disqualified from receiving unemployment compensation benefits.[1] The Commissioner of the Employment Security Department affirmed the award to Sarah Black of unemployment compensation benefits following her discharge by Puget Sound Security Patrol (PSSP) for a post she made on Facebook. The superior court affirmed. Because PSSP fails in its burden to show that the Commissioner's action was invalid, we affirm.

The material facts are established by the findings of fact. Black worked as a full-time, permanent, nonunion security officer for PSSP from December 2010 to February 2012. She worked the graveyard shift at the Tacoma Public Utilities (TPU) building. In the course of her duties, Black routinely interacted with a wide range of people, including police officers.

---

[1] RCW 50.20.066(1).

In February 2012, Black "posted" the following message on Facebook:

> u kno wat, I do not give a f[***] about a police officer that got shot, if they quit fu[*]kin wit ppl, ppl prolly quit shootin em all the goddamn time.......karmas a bitch[2]

"Generally speaking, a post from an individual's profile will appear in another user's news feed if that user has connected with the individual on Facebook by creating a 'friend' relationship, generally referred to as 'friending' another user."[3] The words "post," "friend," and "friending" used in this context merely refer to individuals communicating with those listed on a social networking website and does not, necessarily, imply any more significant relationship between those individuals.

Black posted this message on Facebook while she was at home, not on duty. She had set her Facebook privacy level so that her posts were only accessible to the approximately 100 people designated as her "friends" on Facebook. Members of the public and others not listed as "friends" could not view her posts.

One of Black's Facebook "friends," a TPU employee, disagreed with the post but did not tell Black that he was going to tell anyone else about it. He sent a copy of the message to TPU's customer service department who then notified Black's supervisor. Black's supervisor notified PSSP's CEO and Executive Vice President for Employee Relations.

---

[2] Administrative Record at 306.

[3] Andy Taylor, Friending and Following: Applying the Rules of Professional Conduct to Social Media, 34 U. ARK. LITTLE ROCK L. REV. 551, 556 (2012).

When confronted, Black told her supervisor that she had the right to express an opinion when she was not at work and that her Facebook settings were private. PSSP did not then have any specific social media policies or guidelines with respect to Facebook or other social media sites. And the company had not given Black or other employees instructions regarding communications on such channels of communication. PSSP discharged Black.

Black applied for, and received, unemployment compensation benefits. The Employment Security Department determined that there was no disqualifying misconduct by Black.

PSSP appealed, and an administrative law judge (ALJ) entered an order affirming the Department's decision. PSSP petitioned the Department's Commissioner for review. The Commissioner adopted the ALJ's findings of fact and conclusions of law and affirmed the initial order.

PSSP appealed to King County Superior Court. The court affirmed the Commissioner's decision and denied PSSP's motion for reconsideration.

PSSP appeals.

## DISQUALIFYING MISCONDUCT

PSSP argues that the Commissioner erred in concluding that Black did not commit disqualifying misconduct. We hold that PSSP fails in its burden to show that the Commissioner's action was invalid.

The Employment Security Act exists to provide compensation to individuals who are involuntarily unemployed "through no fault of their own."[4] An

---

[4] RCW 50.01.010.

3

individual is disqualified from receiving unemployment benefits if he or she is discharged "for misconduct connected with his or her work."[5]

Judicial review of a decision made by the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act (WAPA).[6] This court sits in the same position as the superior court and applies the standards of WAPA directly to the administrative record before the agency.[7] This court reviews the Commissioner's decision.[8]

The Commissioner's decision is prima facie correct.[9] The party challenging the agency's action bears the burden of demonstrating its invalidity.[10] Relief from an agency decision is granted if the reviewing court determines that the Commissioner erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious.[11]

This court reviews findings of fact to determine whether they are supported by substantial evidence.[12] An appellate court views the evidence and

---

[5] RCW 50.20.066(1).

[6] Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[7] Id.

[8] Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

[9] RCW 50.32.150.

[10] Id.; RCW 34.05.570(1)(a).

[11] RCW 34.05.570(3)(d), (e), (i).

[12] Barker v. Emp't Sec. Dep't, 127 Wn. App. 588, 592, 112 P.3d 536 (2005).

reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative proceeding below.[13] Unchallenged findings are verities on appeal.[14]

The application of law to the facts is a question of law that this court reviews de novo.[15] This court gives substantial weight to the agency's interpretation of the statutes it administers.[16]

Whether a claimant engaged in misconduct connected with work is a mixed question of law and fact.[17] Accordingly, this court determines the law independently and then applies the law to the facts as found by the agency.[18]

*Work-Connected*

PSSP argues that the Commissioner erred when it concluded that Black's conduct was not connected to work. We disagree.

Whether off-duty conduct is work-connected for purposes of qualifying for unemployment compensation benefits was first addressed by the supreme court

---

[13] William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).

[14] Fuller v. Emp't Sec. Dep't, 52 Wn. App. 603, 605, 762 P.2d 367 (1988).

[15] Terry v. Emp't Sec. Dep't, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996).

[16] Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).

[17] Tapper, 122 Wn.2d at 402.

[18] Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998), review denied, 137 Wn.2d 1036 (1999).

in Nelson v. Department of Employment Security.[19] There, the claimant was a cashier for a publishing company.[20] She notified her supervisor that she recently had been arrested for shoplifting.[21] The crime occurred off her employer's premises and after working hours.[22] Nothing during her appearance in court or at the time of her arrest identified her employer.[23] She pled guilty to the charge and the court imposed a $50 fine, a 10-day suspended jail sentence, and a 3-month deferred sentence.[24]

Her employer discharged her based on concern about her trustworthiness in handling cash and a fear her conviction would adversely affect her relationship with other employees of the publishing company.[25] The court noted that she did not contest the propriety of her discharge.[26]

The supreme court concluded that the claimant in Nelson was entitled to unemployment compensation benefits.[27] In doing so, the supreme court adopted

---

[19] 98 Wn.2d 370, 372, 655 P.2d 242 (1982).

[20] Id. at 371.

[21] Id.

[22] Id.

[23] Id.

[24] Id.

[25] Id. at 371-72.

[26] Id. at 372.

[27] Id. at 375.

a three part test in order to establish misconduct connected with an employee's work.[28] Specifically, the employer must show by a preponderance of the evidence that a reasonable person would find the employee's conduct: "(1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interest; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer."[29]

For the third element, the court held that the conduct cannot be impliedly contracted between employer and employee. Rather, it "must be the subject of a contractual agreement between employer and employee" though it need not be a formal written contract.[30] It "may be reasonable rules and regulations of the employer of which the employee has knowledge and is expected to follow."[31] In so holding, the court expressly rejected as far too broad this court's formulation of the rule, prior to review by the supreme court in that case, that violation of a code of behavior *impliedly* contracted was sufficient.[32] Rather, it at least requires a reasonable rule or regulation known to the employee.[33]

---

[28] Id. at 373-75.

[29] Id. at 375.

[30] Id. at 374.

[31] Id.

[32] Id.

[33] Id.

Importantly, the question before this court is not whether Black should have been terminated from her job. Rather, the question is whether the Commissioner properly concluded that Black was eligible to receive unemployment compensation benefits under the Employment Security Act.[34]

As counsel for the Department conceded during oral argument at the superior court when asked whether Black's post was defensible:

> [DEPARTMENT COUNSEL]: No, Your Honor. ***And I agree, it was offensive and despicable.*** The problem is, it wasn't sufficiently connected with her work to constitute misconduct that should disqualify her from receiving unemployment benefits. And as Your Honor has correctly indicated, ***the question isn't: Did this employer have the right to fire her? Absolutely, they did.*** The question is: Did they fire her for misconduct as it's defined by the Employment Security Act such that she should not get unemployment benefits? And the statute for misconduct says you're disqualified if you're discharged for misconduct that's connected with your work. And that's also what it says in the Department's regulations.[35]

Here, adopted findings of fact 3, 4, 5, and 8 establish the factual basis to determine whether Black's post was work-connected.

In finding of fact 3, the Commissioner found, in relevant part, that "[Black] posted the message from home, when she was not on duty."[36] PSSP challenges this finding, but it is supported by substantial evidence. Black testified that she was at home and not at work when she made the post.[37]

---

[34] See Tapper, 122 Wn.2d at 412; Johnson v. Emp't Sec. Dep't, 64 Wn. App. 311, 314-15, 824 P.2d 505 (1992).

[35] Report of Proceedings (June 25, 2013) at 16 (emphasis added).

[36] Administrative Record at 306.

[37] Id. at 133, see also 235.

In finding of fact 4, the Commissioner found, in relevant part, that Black "had set her Facebook privacy level so that her . . . postings were only accessible to the approximately 100 people designated as her friends on Facebook. Members of the public and others not listed as friends could not view her [post]."[38] PSSP does not challenge this finding, and thus, it is a verity on appeal.

In finding of fact 5, the Commissioner found, in relevant part:

> [Black's] message was an expression of a personal opinion that did not include any reference to [PSSP], to [TPU], or to her job as a security officer. She did not intend to communicate her opinion to [PSSP], to [TPU], or to anyone not on her list of friends. The person who reported her message to [TPU] had disagreed with [Black] in a blog posting but had not told [Black] that he was going to tell anyone else about it.[39]

PSSP challenges this finding, but it, too, is supported by substantial evidence. Black testified that she made the post because it was her "personal feelings upon reading the news that day."[40] She further testified, "I didn't say anything about work or co-workers or clients or the company. My post had absolutely nothing to do with my job."[41] Additionally, she testified that she did not intend to cause any harm or embarrassment to PSSP. And she testified that she did not expect that the post would be known to PSSP. Moreover, the privacy

---

[38] Id. at 306.

[39] Id.

[40] Id. at 132.

[41] Id. at 133.

settings on Facebook and the undisclosed intent of one of the limited "friends" to forward the post, with which he disagreed, amply support this finding.

In finding of fact 8, the Commissioner found, in relevant part: "[PSSP] did not have any specific social media policies or guidelines and had not given [Black] and other employees instructions with respect to communications on Facebook or similar channels of communication."[42] PSSP does not challenge this finding, and thus, it is also a verity on appeal.

Based on the above findings, the Commissioner affirmed Conclusion 10 of the ALJ's order, which stated in relevant part:

> 10. Based on the above findings and pursuant to the above referenced authority, [PSSP] has not met its burden of proof with respect to misconduct. ***There is no evidence of a nexus between [Black's] blog post and her work***. It was sent from her home when she was not at work. It made no reference to [PSSP], to TPU, to her job, or to her position as a security officer. . . . [Black] sent the message only to the individuals who were within the privacy settings she had established in Facebook. She did not intend to send the message to [PSSP] or to others. Further, none of [PSSP's] general policies, rules, or instructions addressed social media communications in any way, and the policies, rules, and instructions that were in place were very general and for the most part specifically govern conduct at the workplace or on the job. . . . ***[Black's] actions therefore do not violate a code of behavior contracted for between [PSSP] and [Black]***. [PSSP] made numerous arguments for why [Black's] behavior impliedly violated their general policies, but implied behavior is not the standard that must be applied. Accordingly, [Black] is not subject to disqualification under RCW 50.20.066.[43]

---

[42] Id. at 307.

[43] Id. at 310 (emphasis added).

First, consistent with the directive of Nelson, the Commissioner properly concluded that there was "no evidence of a nexus between [Black's] [post] and her work."[44] The Commissioner affirmed the factual determination of the ALJ that the post was made while Black was at home and not on duty, and the post made no reference to PSSP, to TPU, or to Black's job or to her position of a security officer. Further, Black made the post on her private Facebook page, which was accessible only to her "friends." Consequently, PSSP fails to establish that the first Nelson element is met—that the conduct had some nexus with Black's work.

Second, again consistent with Nelson, the Commissioner properly concluded that Black did "not violate a code of behavior contracted for between [PSSP] and [Black]."[45] The Commissioner affirmed the factual determination of the ALJ that there was no policy of the company that dealt with posts on Facebook or other social media sites. And the company did not direct its employees in any respect with respect to communication using these media until after Black's discharge. Thus, PSSP fails to establish that the first requirement of the third Nelson element is met—that the conduct was "violative of some code of behavior contracted for between employer and employee."[46]

Further, the Commissioner also properly concluded that Black "did not intend to send the message to [PSSP] or to others."[47] In fact, the Commissioner

---

[44] Id.

[45] Id.

[46] See Nelson, 98 Wn.2d at 375.

[47] Administrative Record at 310.

11

expressly found that Black "did not intend to communicate her opinion to [PSSP], to [TPU], or to anyone not on her list of friends" and that Black's post was "an expression of personal opinion."[48] Accordingly, PSSP also fails to establish that the other requirement of the third Nelson element is met—that the conduct was "done with intent or knowledge that the employer's interest would suffer."[49]

In sum, PSSP failed to establish the first and third required Nelson elements. The Commissioner, whose decision is prima facie correct, properly concluded that that Black's post on Facebook was not work-connected.

PSSP makes several arguments that Black's conduct was work-connected. None are persuasive.

First, PSSP claims that the Commissioner erred in finding insufficient nexus, because "[c]onduct is connected with one's work if it 'results in harm or creates the potential for harm to [PSSP's] interest.'"[50] For this, it relies on WAC 192-150-200(2). But in doing so, it misreads and misapplies both Nelson and this administrative regulation. Under Nelson, the first of several elements of the test to determine whether conduct is work-connected is that there be "some nexus with the employee's work."[51] The second, separate element is that the

---

[48] Id. at 306.

[49] See Nelson, 98 Wn.2d at 375.

[50] Brief of Appellant at 29 (emphasis omitted) (quoting WAC 192-150-200(2)).

[51] Nelson, 98 Wn.2d at 375.

12

conduct "resulted in some harm to the employer's interest."[52] PSSP impermissibly merges these separate elements—nexus and harm—in its argument.

PSSP also relies on the same administrative regulation to argue that harm to the employer can include the potential for harm. Thus, it argues that it was an error of law to require evidence of "specific harm." With this argument, PSSP refers to a portion of Conclusion 10 where the Commissioner concluded, "While the offensive content of the [post] had the potential to harm [PSSP's] relationship with it's [sic] client, there is no evidence of specific harm here as [PSSP] immediately discharged [Black]."[53]

As the Department correctly concedes, this portion of Conclusion 10 was erroneous. WAC 192-150-200(2) provides that "the action or behavior is connected with [a person's] work if it results in harm *or creates the potential for harm* to [the] employer's interests."[54] And here, as the Commissioner properly concluded, there was the potential for harm to PSSP. Thus, the second Nelson element—harm to the employer—is satisfied. Nevertheless, this error is not material, because it relates only to the second Nelson element. And as already discussed, PSSP fails to establish both the first and third Nelson elements.

_____

[52] Id.

[53] Administrative Record at 310.

[54] (Emphasis added.)

Next, PSSP argues that Black "violated a company rule requiring courtesy, and the policies requiring positive relationships with law enforcement."[55] And it asserts that Black "knew about the rule requiring professionalism, courtesy, and respect."[56] In support, it points to policies detailing TPU's ethical conduct requirements, general workplace policy, and TPU's policies about professionalism. But PSSP fails to explain how the rule requiring "professionalism, courtesy, and respect" reasonably extends to off-duty, off-site, social media posts. As already discussed, implied behavior is not the standard.

PSSP relies on WAC 192-150-210(4), which states that "[a] company rule is reasonable if it is related to [the person's] job duties, is a normal business requirement or practice for [the] occupation or industry, or is required by law or regulation."[57] And it argues that the rule requiring professionalism, courtesy and respect "reasonably related to [Black's] job duties because the client whom she was assigned to protect included law enforcement and because a security guard's relationship with law enforcement is so important."[58] But the Commissioner did not make any findings to support this assertion, and PSSP fails to persuasively explain how this rule is related to Black's job duties under these facts.

---

[55] Brief of Appellant at 27.

[56] Id. at 28.

[57] WAC 192-150-210(4).

[58] Brief of Appellant at 28.

14

PSSP also argues that the following portion of Conclusion 10 is arbitrary and capricious: "The fact that [PSSP] deemed it necessary to tell [Black's] co-workers after she was discharged that nothing they said on Facebook should be considered private shows that this was not a rule or instruction that had been contracted for with employees prior to her discharge."[59] But even if we were to disregard this portion of the court's conclusion, it does not materially affect the outcome, because as just discussed, PSSP still fails to show that Black violated an existing code of behavior or a reasonable rule. Likewise, it is clear that if such a policy did not exist, Black could not have known of it. PSSP's suggestions to the contrary are wholly unpersuasive and we reject them.

PSSP next argues that the "law governing employment benefits does not require a specific intent to harm."[60] PSSP is again wrong. Nelson remains the focus of our examination. And the third element to show that the conduct is work-connected is that the conduct is "done ***with intent or knowledge that the employer's interest would suffer***."[61] Thus, the plain words of the element refute this argument.

PSSP relies on Griffith v. State Department of Employment Security and Hamel v. Employment Security Department to support this argument.[62] But

---

[59] Reply Brief of Appellant at 12 (citing Administrative Record at 310).

[60] Brief of Appellant at 32.

[61] Nelson, 98 Wn.2d at 375 (emphasis added).

[62] Brief of Appellant at 32 (citing Griffith v. Emp't Sec. Dep't, 163 Wn. App. 1, 259 P.3d 1111 (2011); Hamel, 93 Wn. App. 140).

PSSP's reliance on these cases is misplaced. Neither of these cases conducted an analysis of work-connected misconduct under Nelson. And the third Nelson element requires the employer to show that the employee's conduct was "done with intent or knowledge that the employer's interest would suffer."[63] Thus, while specific intent to harm may not be relevant to the statutory definitions of misconduct, it is relevant under Nelson.

PSSP also argues that findings of fact 4 and 5 conflict. It alleges that the fact that one of Black's Facebook friends, a TPU employee, saw the post, contradicts the fact that Black did not intend to communicate her opinion to TPU. But these findings do not necessarily conflict. Black could intend to communicate the post to her Facebook friends and not intend for her Facebook friends to communicate the post to TPU. The fact that one of her Facebook friends was a TPU employee does not mean Black intended for that friend to communicate the post to his employer.

Finally, for the first time in its reply brief, PSSP argues that the Department's regulation, WAC 192-150-200, "replaces or refines the Nelson test." This argument is untenable.

WAC 192-150-200(2) provides that an action or behavior is connected with work "if it results in harm or creates the potential for harm to [the] employer's interests." Thus, PSSP appears to argue that the first and third Nelson elements are no longer part of the test. This reading is unpersuasive.

---

[63] Nelson, 98 Wn.2d at 375.

As the Department correctly argued at oral argument of this case, the three elements of Nelson remain the law. The mere establishment of either harm or potential for harm is insufficient to satisfy the other two elements of the Nelson test. Any other reading conflicts with Nelson, which remains the law of this state.

To summarize, because PSSP failed to establish the first and third Nelson elements, the Commissioner properly concluded that Black's conduct was not work-connected. Based on this threshold determination, the question of whether the Facebook post constituted statutory misconduct is not material to the outcome.

*Misconduct*

PSSP next argues in its briefing that the Commissioner erred when it concluded that Black did not commit misconduct. It contends that Black committed statutory misconduct under RCW 50.04.294. But at oral argument, PSSP appeared to concede that misconduct would not be material to the outcome of this case if it failed to establish that the conduct here was work-connected. Nevertheless, we reach the issue of misconduct to be clear and complete in this case.

RCW 50.04.294(1) provides a non-exhaustive list of "misconduct":

(a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;

(b) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

(c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or fellow employee; or

17

(d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

Subsection (2) provides that certain acts are misconduct per se, because they "signify a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee."[64] Among those is (2)(f), which is a "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."[65]

PSSP only places in issue in its briefing on appeal subsections (1)(b), (1)(d), and (2)(f) of the above statute.

### RCW 50.04.294(1)(b)

First, PSSP argues that Black's conduct met the statutory definition of misconduct under subsection (1)(b). Under this subsection, misconduct may include "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee."[66]

As the Department points out, PSSP has a right to expect professionalism and courtesy at the workplace. But PSSP does not explain why it has a right to expect these standards of behavior when the employee is off-site and off-duty. And PSSP fails to provide any support for this argument. Accordingly, it fails to show misconduct under this subsection.

---

[64] RCW 50.04.294(2).

[65] RCW 50.04.294(2)(f).

[66] RCW 50.04.294(1)(b).

PSSP cites RCW 18.170.170 and RCW 18.235.130(4), which provide examples of "unprofessional conduct." PSSP cites to one subsection in particular, which states that "[i]ncompetence, negligence, or malpractice that results in harm or damage to another or that creates an unreasonable risk of harm or damage to another" constitutes unprofessional conduct.[67] But it is not clear how these statutes, which provide examples of "unprofessional conduct," relate to the inquiry before this court, whether the conduct was unprofessional *misconduct*. More importantly, PSSP fails to explain how Black's conduct was deliberate or created an "unreasonable risk of harm or damage to another." For these reasons, reliance on these statutes is not helpful.

### *RCW 50.04.294(1)(d)*

Second, PSSP argues that Black's conduct met the statutory definition of misconduct under subsection (1)(d). Under this subsection, misconduct may include "[c]arelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest."[68] "'Carelessness' and 'negligence' mean failure to exercise the care that a reasonably prudent person usually exercises."[69] These are not established on this record.

While Black's post was contrary to PSSP's interests, PSSP fails to articulate how it was an "intentional or substantial disregard" of its interests. In

---

[67] RCW 18.235.130(4).

[68] RCW 50.04.294(1)(d).

[69] WAC 192-150-205(3).

19

fact, the Commissioner found that Black "did not intend to communicate her opinion to [PSSP], to [TPU] or to anyone not on her list of friends."[70]

Further, as the court also found, Black had set her Facebook privacy level so that her post was accessible only to the approximately 100 people designated as her friends. Members of the public and others could not view the post. And Black did not refer to her employer, to TPU, or to her job as a security officer. PSSP fails to explain how, in light of these facts, Black did not exercise the care that a reasonably prudent person exercises.

PSSP points out that Black's post was visible to a TPU employee and argues that the post "caused embarrassment and damage to the business relationship."[71] But even if the post caused embarrassment and damage, PSSP fails to establish that Black's conduct was intentional or in substantial disregard to PSSP's interests. Thus, PSSP also fails to show misconduct under this subsection.

### RCW 50.04.294(2)(f)

Third, PSSP argues that Black's conduct met the statutory definition of misconduct under subsection (2)(f). Under this subsection, misconduct may include "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."[72]

---

[70] Administrative Record at 306.

[71] Brief of Appellant at 29.

[72] RCW 50.04.294(2)(f).

Black did not commit disqualifying misconduct under this subsection for the same reasons that the court properly concluded that the third Nelson element was not met. Specifically, unchallenged finding of fact 8 establishes that Black did not violate any company rule related to social media posts. Further, PSSP fails to show how the policies and rules requiring professionalism, courtesy, and respect reasonably extend to off-site, off-duty social media posts.

In sum, PSSP fails to show that Black committed misconduct.

PSSP relies on Smith v. Employment Security Department.[73] It appears to argue that Black can commit misconduct in ways other than by violating a specific policy. In Smith, Division Two concluded that even if there had not been substantial evidence that David Smith was aware of the county policy that he violated to support misconduct under (2)(f), he nonetheless committed misconduct under (1)(d). We note that PSSP fails to establish misconduct under any statutory subsections relevant to this case. Thus, this case is not helpful.

In its reply brief, PSSP asserts for the first time that other jurisdictions have denied benefits in similar circumstances.[74] We do not generally address arguments raised for the first time in a reply brief.[75] And PSSP fails to articulate why we should do so in this case. In any event, extra-jurisdictional cases are not

---

[73] Brief of Appellant at 35-36 (citing Smith, 155 Wn. App. at 35-36).

[74] Reply Brief of Appellant at 6-7 (citing Guevarra v. Seton Med. Ctr., 2013 WL 6235352 (N.D. Cal. 2013)).

[75] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992)).

helpful to the inquiry before this court—whether Black's conduct meets Washington's statutory definition of misconduct.

## EVIDENTIARY RULING

PSSP argues that it was deprived of its due process right to cross-examine Black. We hold there was no abuse of discretion in the evidentiary ruling limiting the scope of cross-examination.

PSSP fails to provide any authority to support the proposition that this evidentiary decision rises to the constitutional magnitude of due process. In the absence of such authority we assume there is none.

Decisions regarding the scope of cross-examination are normally evidentiary rulings left to the sound discretion of the trial court.[76] A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds.[77]

Here, the Commissioner properly concluded that the ALJ properly sustained objections, based on relevancy on cross-examination questions about the history of Facebook's privacy settings and the dissemination of information on the Internet. The ALJ noted that Black testified that her Facebook privacy settings were limited to her friends and there was no evidence that the information came to anyone's attention other than through one of Black's Facebook friends. Accordingly, the ALJ stated, there was "no basis for this

---

[76] Falk v. Keene Corp., 53 Wn. App. 238, 247, 767 P.2d 576 (1989).

[77] Id.

broad, somewhat academic discussion of the functioning of the Internet."[78] For the reasons identified by the ALJ, this was a proper exercise of discretion. Arguments to the contrary have no basis.

PSSP relies on Baxter v. Jones.[79] But in Baxter, the court terminated the trial and gave a ruling before the cross examination had been completed.[80] It is easily distinguishable from this case, where the court properly sustained objections to a broad line of questioning during cross-examination, which exceeded the scope of direct examination. Thus, reliance on Baxter is misplaced.

We affirm the superior court's decision affirming the Commissioner's decision and denying PSSP's motion for reconsideration.

Cox, J.

WE CONCUR:

_Leach, J._      _Jan, J._

---

[78] Administrative Record at 141.

[79] Brief of Appellant at 37-38 (citing Baxter v. Jones, 34 Wn. App. 1, 3, 658 P.2d 1274 (1983)).

[80] Baxter, 34 Wn. App. at 3.