

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOSE E. CUESTA, | No. 75405-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF EMPLOYMENT SECURITY, | PUBLISHED OPINION |
| Appellant. | FILED: September 25, 2017 |

MANN, J. — Jose Cuesta was discharged from the Boeing Company for failing to physically inspect parts he had approved and verified as inspected. After the Employment Security Department (Department) granted unemployment benefits, Boeing appealed. After the hearing, an Administrative Law Judge (ALJ) determined Cuesta was discharged for misconduct under RCW 50.20.066(1) and RCW 50.04.294(1)(d), and was disqualified from receiving benefits. The Department's Commissioner affirmed and adopted the ALJ's findings of fact and conclusions of law. The superior court reversed. The Department appeals. We now reverse the superior court and affirm the Commissioner's decision.

## FACTS

Cuesta worked full time as an airplane assembly and installation inspector for Boeing from May 25, 2007, until June 30, 2015.[1] Cuesta was required to physically inspect fabricated airplane parts after they were manufactured to ensure the integrity and performance of the parts prior to installation on commercial aircraft.[2] Cuesta was given training, tools, and step-by-step instructions on how to inspect each part.[3] Cuesta's job was vital to the safety of passengers traveling on aircraft manufactured by Boeing.[4] Cuesta was typically assigned to the Automated Systems Assembly Tool area, and assigned to inspect the spine of the airplane wing.

On March 25, 2015, Cuesta was assigned to work in a different assembly area to cover work for another inspector. While Cuesta was not as familiar with the work performed in that area of the plant, Cuesta's duties as an inspector were the same.[5] After two other inspectors reported that Cuesta was not adequately inspecting parts, Cuesta's manager, Vance Church, observed Cuesta's work area.

Church observed that the computer system showed a part in Cuesta's area was ready for inspection. The notification remained on the screen for a while, then showed the part as inspected and approved.[6] Church observed that Cuesta was not at the work site and could not have physically inspected the part.[7]

---

[1] Finding of Fact (FF) 3. The ALJ's findings of fact were adopted by the Commissioner. Cuesta did not challenge the findings of fact in his appeal to the superior court. Unchallenged findings are verities on appeal. Kirby v. Emp't Sec. Dept., 185 Wn. App. 706, 713, 342 P.3d 1151 (2014).

[2] FF 4 and 5.

[3] FF 5.

[4] FF 4.

[5] FF 6.

[6] FF 7.

[7] FF 7.

Church began an investigation into Cuesta's work. His investigation revealed that Cuesta also marked airplane wing holes as inspected, certifying that they satisfied the required size and configuration, even though the holes had not yet been drilled into the wings.[8]

Given the potentially catastrophic consequences of faulty inspections, Boeing disassembled the partially assembled aircraft to inspect the remaining component parts that Cuesta had marked as inspected in order to validate compliance.[9]

Boeing's workplace rules "prohibit falsifying of acceptance or approval o[f] work, such as stamping work complete with the knowledge work wasn't completed or done, or stamping work without checking." This rule is to protect the public from the consequences of defective aircraft.[10] Cuesta was aware that he was never to "approve or 'sign off' on work without performing the inspection."[11]

When confronted, Cuesta explained that he was very busy. The plant was short-staffed in his area, and he was distracted by coworkers, who were leaving threatening notes on his computer because he did not support the Seattle Seahawks. Cuesta did not identify any specific reason for his failure to inspect other than his error.[12]

Cuesta was discharged on June 30, 2015, for failing to inspect these specific parts he approved and verified as inspected.[13]

Cuesta then applied for unemployment benefits through the Department. Because Boeing failed to respond, the Department approved benefits after concluding

---

[8] FF 9.
[9] FF 10.
[10] FF 11.
[11] FF 12.
[12] FF 13.
[13] FF 14.

that it could not determine whether the discharge was for misconduct. Boeing filed a timely appeal of the Department's decision.

The notice provided by the Department to Cuesta set out his rights in both English and Spanish. The notice included a statement, in English and Spanish, that if "you or one of your witnesses does not speak English, tell us you need an interpreter and the language that you or your witness speaks." Cuesta did not request an interpreter.

A telephonic administrative hearing was held on September 11, 2015, before an ALJ with the State of Washington, Office of Administrative Hearings. The hearing was conducted in English. Cuesta participated in the hearing. Cuesta understood that he had the right to an attorney but chose to represent himself.

The ALJ issued findings of fact, conclusions of law, and an order at the conclusion of the hearing. The ALJ reversed the Department's decision awarding benefits after concluding that Cuesta was discharged for misconduct under RCW 50.20.066(1) and RCW 50.04.294(1)(d). The ALJ concluded that Cuesta was ineligible for unemployment benefits.

Cuesta petitioned the Department's Commissioner for review of the ALJ's order. The Commissioner affirmed the ALJ's order and adopted the ALJ's findings of fact and conclusions of law. The Commissioner concluded:

> discharge precipitating conduct has been shown, by a preponderance of substantial evidence of record, to have evinced carelessness or negligence of such a degree or recurrence as to show an intentional or substantial disregard of the employer's interest. RCW 50.04.294(1)(d). Misconduct, as that term is contemplated by RCW 50.20.066(1), has been established.

-4-

The Commissioner confirmed that Cuesta was disqualified from the receipt of benefits.

Cuesta then appealed to the King County Superior Court. Cuesta did not dispute any of the Commissioner's factual findings, only that the commissioner misapplied the law. The superior court reversed the Commissioner's decision and the Department appealed.

## ANALYSIS

### Interpreter

Cuesta argues first that remand for a new hearing is necessary because the hearing was conducted in English, when Cuesta's preferred language is Spanish.

Both the United States Constitution, and Chapter 2.43 RCW, guarantee the right to the assistance of a court-appointed interpreter for non-English speakers involved in court proceedings. State v. Gonzales-Morales, 138 Wn.2d 374, 378-79, 979 P.2d 826 (1999). A "non-English-speaking person" is "any person involved in a legal proceeding who cannot readily speak or understand the English language." RCW 2.43.020(4). The right to an interpreter extends to administrative hearings. See, e.g., WAC 263-12-097. But there is no affirmative obligation to appoint an interpreter for a party where the party's lack of fluency or facility in the language is not apparent. State v. Mendez, 56 Wn. App. 458, 462-63, 784 P.2d 168 (1989). The decision whether to appoint an interpreter will be upheld absent an abuse of discretion. Mendez, 56 Wn. App. at 463; Gonzales-Morales, 138 Wn.2d at 381.

Before the hearing, Cuesta received notice from the Department notifying him in both English and Spanish that he could request an interpreter. He did not make a request for a Spanish interpreter. Moreover, the hearing transcript reflects that Cuesta

was fully able to speak and respond in English. Cuesta did not inform the ALJ that he was impaired by a language barrier. There was no reason for the ALJ to know that Cuesta needed an interpreter. The ALJ did not abuse her discretion in not appointing one.

## Transcript

Cuesta next argues that remand is necessary due to technical issues with the transcript. In general, "[a]n insufficient record on appeal precludes review of the alleged errors." Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994). Further, this court will "decline to address a claimed error when faced with a material omission in the record." State v. Wade, 138 Wn.2d 460, 465, 979 P.2d 850 (1999).

Cuesta cites to several places in the hearing transcript where the ALJ commented on there being feedback, and where missing words were replaced with "[inaudible]." Cuesta does not argue, however, that any substantive content was lost. Moreover, because Cuesta did not assign error to any of the findings of fact, Cuesta cannot claim that any missing words led to errors.

## Disqualifying Misconduct

Cuesta argues that the Commissioner erroneously concluded that he was disqualified from receiving unemployment benefits because he committed disqualifying misconduct under RCW 50.04.294. We disagree.

The Employment Security Act, Title 50 RCW, exists to provide compensation to individuals who are involuntarily unemployed "through no fault of their own." RCW 50.01.010. An individual is disqualified from receiving unemployment benefits if he or

-6-

she is discharged for misconduct connected with his or her work. RCW 50.20.066(1); Kirby v. of Emp't Sec. Dep't., 185 Wn. App. 706, 712, 342 P.3d 1151 (2014). "The operative principle behind the disqualification for misconduct is the fault of the employee." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 409, 858 P.2d 494 (1993).

"The question of discharge is independent of the question of misconduct." Tapper, 122 Wn.2d at 412. Thus, the fact that Cuesta's acts were sufficient grounds to justify discharge from employment does not necessarily mean that they are sufficient grounds to constitute statutory misconduct that disqualifies him from unemployment benefits. Wilson v. Emp't Sec. Dep't, 87 Wn. App. 197, 203, 940 P.2d 269 (1997) (citing Ciskie v. Dep't of Emp't Sec., 35 Wn. App. 72, 664 P.2d 1318 (1983)).

A.    Standard of Review

"Our limited review of an agency decision is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW." Campbell v. Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). On review, this court sits in the same position as the superior court and applies the APA standards directly to the administrative record. Campbell, 180 Wn.2d at 571. This court reviews the Commissioner's decision, not the decision of the ALJ, except where, as here, the Commissioner adopts the ALJ's findings of fact. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). The Commissioner's decision is prima facie correct. RCW 50.32.150. Because Cuesta appealed the Commissioner's decision to the superior court, it is Cuesta's burden on appeal to show the decision was in error. RCW 34.05.570(1)(a); RCW 50.32.150; Campbell, 180 Wn.2d at 571.

Unless a statute or agency rule is challenged as unconstitutional or otherwise invalid, our APA review of an agency decision "is limited to deciding if the decision is based on an error of law, the order is not supported by substantial evidence, or the order is arbitrary and capricious." Campbell, 180 Wn.2d at 571; RCW 34.05.570(3)(a)-(i).

We review questions of law de novo, under the error of law standard. RCW 34.05.570(3)(d); Tapper, 122 Wn. 2d at 407. Because the Department has expertise in interpreting and applying unemployment benefits law, we give substantial weight to the Department's interpretation of the statute it administers. Markham Grp. Inc. v. of Emp't Sec. Dep't, 148 Wn. App. 555, 561, 200 P.2d 748 (2009); Daniels v. Emp't Sec. Dep't, 168 Wn. App. 721, 727, 281 P.3d 310 (2012).

We review findings of fact to determine whether they are supported by substantial evidence. Barker v. Emp't Sec. Dep't, 127 Wn. App. 588, 592, 112 P.3d 536 (2005). Evidence is substantial if it is "sufficient . . . to persuade a reasonable person of the truth of the declared premise." Barker, 127 Wn. App. at 592. We view the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative hearing below, in this case, the Department. William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Unchallenged findings are verities on appeal. Fuller v. Dep't of Emp't Sec., 52 Wn. App. 603, 605, 762 P.2d 367 (1988).

B.     Statutory Misconduct

RCW 50.04.294(1) provides a nonexhaustive list of defined "misconduct" that will disqualify an applicant from receiving unemployment benefits. Kirby, 185 Wn. App. at

724. The Commissioner concluded Cuesta's actions met the statutory definition under RCW 50.04.294(1)(d) because they were: "[c]arelessness or negligence of such a degree or recurrence as to show an intentional or substantial disregard of the employer's interest."[14] Unlike other statutory definitions of misconduct in RCW 50.04.294(1), RCW 50.04.294(1)(d) does not require a showing of "willfulness" and "wantonness," meaning the employee's actions need not be done intentionally, or with the intent to cause the employer harm.[15]

Under RCW 50.04.294(1)(d), if a worker engages in a single significant incident of carelessness or negligence, or repeatedly fails to exercise the care that a reasonable person usually exercises ("recurrence"), they have committed "misconduct." See Guijosa v. Wal-Mart Stores, Inc. 101 Wn. App. 777, 790, 6 P.3d 583 (2000) (courts generally presume the use of "or" in a statute as disjunctive, absent clear contrary legislative intent). When the carelessness or negligence is of a sufficient degree, misconduct can arise from a single instance. See, e.g., Johnson v. Emp't Sec. Dep't, 64 Wn. App. 311, 316, 824 P.2d 505 (1992) (holding employee committed disqualifying misconduct by failing to realize her gun was in her purse when she arrived at work, then failing to realize it had fallen out of her purse onto the floor of her bus).

Here, Cuesta's job was integral to the safety of aircraft manufactured by Boeing. Cuesta was charged with inspecting parts before installation on aircraft. He was supposed to inspect, validate, and verify that parts were fabricated pursuant to

---

[14] "Carelessness" and "negligence," in turn, are defined by regulation as the "failure to exercise the care that a reasonably prudent person usually exercises." WAC 192-150-205(3).

[15] See RCW 50.04.294(1)(a) ("Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee") and RCW 50.04.294(1)(b) ("Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee").

engineering requirements and installation plans to ensure the integrity and performance of the part, and ultimately the safety of the consumer on the aircraft.[16] Boeing's rules prohibit an inspector from stamping work as complete with the knowledge that the work wasn't completed or done. "This rule is to protect the public from the consequences of defective aircraft, and is a reasonable rule."[17] Despite these requirements, Cuesta twice stamped work as complete without physically inspecting the work.[18] Cuesta offered no explanation for his failure to inspect the work.[19] The serious consequences of Cuesta's actions resulted in Boeing disassembling the partially assembled aircraft to inspect parts approved, but not actually inspected by Cuesta.[20]

Based on the unchallenged findings of fact, the ALJ summarized, and the Commissioner agreed, that:

> A preponderance of the evidence establishes that the claimant failed to inspect aircraft parts he approved and verified as meeting the specifications supplied, that he knew the seriousness of a failure to inspect. The gravity of the failure to inspect was such that the employer disassembled partially assembled aircraft to inspect parts because of the claimaint's failure. The claimant was required to physically inspect parts. The claimant approved and verified parts he knew, or should have known, had not been inspected by him. On one item, he verified the integrity of holes drilled in a part, when the holes had not been drilled when he approved the part for installation. This is not inadvertence or ordinary negligence, but carelessness or negligence of such degree as to show an intentional or substantial disregard of the employer's interest, and the interests and safety of the flying public.[21]

We agree.

---

[16] FF 4.
[17] FF 11.
[18] FF 7 and 9.
[19] FF 13.
[20] FF 10.
[21] Conclusion of Law 9.

Cuesta argues that the Commissioner erred by not finding his conduct fit one of the exceptions to statutory misconduct in RCW 50.04.294(3)(a) or (b). RCW 50.04.294(3)(a) excludes from misconduct: "[i]nefficiency, unsatisfactory, conduct, or failure to perform well as the result of inability or incapacity." RCW 50.04.294(3)(a) excludes from misconduct "[i]nadvertance or ordinary negligence in isolated instances."

The record is clear that Cuesta's actions were not due to "[i]nefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity" under RCW 50.04.294(3)(a). Cuesta had been working as an inspector for over eight years. Although Cuesta was working in a work site that he was less familiar with, the record demonstrates his inspection duties did not change from one assignment area to the other, and that it was common for inspectors to fill in for other inspectors in different assignments. Cuesta's manager testified that working in this new area was within Cuesta's abilities and experience.

Cuesta compares his conduct to that found in Markam. In Markam, the employee made numerous mistakes, such as typographical errors, and repeatedly failed to properly serve and record legal documents. Markam, 148 Wn. App. at 563. The court held that these errors were not "misconduct" as the employee attempted to perform to the employer's standards, but was unable to do so because she lacked the skills she needed to properly manage a case. Markam, 148 Wn. App. at 564. The record in this case does not support the contention that Cuesta made these mistakes due to "inability" or because he lacked the necessary skills.

-11-

Cuesta's actions were also not "[i]nadvertence or ordinary negligence in isolated instances." RCW 50.04.294(3)(b). Cuesta argues that his improperly marking the parts as inspected were two isolated "mistakes" or "accidents" equating to ordinary negligence. He also reiterates that he was working in an area outside of his usual assignment and was very busy that day, admitting he may have been trying to inspect two things at once, which could have caused him to accidentally mark parts as inspected.

Cuesta relies also on Michaelson v. Emp't Sec. Dep't, 187 Wn. App. 293, 301-02, 349 P.3d 896 (2015). In Michaelson, the court considered whether a delivery driver's three preventable driving accidents within a year constituted misconduct under RCW 50.04.294(1)(d). Within a year Michaelson backed into a parked car, rolled back into a stopped car, and backed into a loading dock. Michaelson, 187 Wn. App. at 296-97. The court held that in light of Michaelson's "generally good driving record," it could not say the "accidents evidence the necessary misconduct to disqualify him from receiving unemployment benefits." Michaelson, 187 Wn. App. at 302. Accordingly, the record lacked "evidence to support a conclusion that Mr. Michaelson's carelessness or negligence was of 'such degree or recurrence to show an intentional or substantial disregard of [the employer's] interest.'" Michaelson, 187 Wn. App. at 301-02. Thus, three accidents, without more, demonstrated only that Michaelson "failed to exercise reasonable care." Michaelson, 187 Wn. App. at 301. The court noted further that

"[n]othing indicates Mr. Michaelson's behavior was intentional, reckless, or even grossly negligent." Michaelson, 187 Wn. App. at 302.[22]

In contrast, Cuesta's conduct was not accidental. Cuesta was aware of the gravity of his job, knew that his inspection was to ensure the safety of the flying public, and was aware that "he must never approve or 'sign off' on work without performing the inspection."[23] Knowing this, Cuesta twice failed to inspect parts. Even if Cuesta had been confused by the assignment, there is no evidence that he requested assistance from his manager, who was in the area, in order to ensure that he was properly performing this essential function. Cuesta's conduct was intentional and in substantial disregard of Boeing's interest in keeping passengers on its aircraft safe.

Viewing the evidence in the light most favorable to the Department, and considering the substantial risk that is associated with improperly inspected aircraft parts, Cuesta's failure to properly inspect the parts was "[c]arelessness or negligence of such degree . . . to show an intentional or substantial disregard of the employer's interest." RCW 50.04.294(1)(d). Cuesta's actions constituted statutory misconduct.

C.     Per Se Misconduct

Even if the conduct was not disqualifying under RCW 50.04.294(1), the State also argues that Cuesta committed per se misconduct under RCW 50.04.294(2)(f) by violating a reasonable company rule that Cuesta knew or should have known about.

---

[22] Cuesta also cites to Wilson v. Emp't Sec. Dep't, 87 Wn. App. 197, 204-05, 940 P.2d 269 (1997). However, Wilson was decided before misconduct was defined in RCW 50.04.294, instead applying RCW 50.04.293, which defined "misconduct" as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business." Wilson, 87 Wn. App. at 201. This definition required that the act be "willful" or with the intent to disregard. Intent or willfulness is not required under the current definition; thus, Wilson is not analogous here.

[23] FF 12.

Although the Commissioner did not conclude that Cuesta committed per se misconduct, we apply the law to the facts de novo and may affirm on any legal ground supported by the record. Tapper, 122 Wn.2d at 403; RAP 2.5(a); State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2014). Because the Commissioner made the relevant findings of fact necessary to reach this conclusion, we agree that Cuesta's actions also constituted per se misconduct.

RCW 50.04.294(2) lists certain acts that are misconduct per se because they "signify a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." Daniels v. of Emp't Sec. Dep't, 168 Wn. App. 721, 728, 281 P.3d 310 (2012) ("Certain types of conduct are misconduct per se"). Acts considered misconduct per se include a "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f). "A company rule is reasonable if it is related to your job duties, is a normal business requirement or practice for your occupation or industry, or is required by law or regulation." WAC 192-150-210(4). The Department "will find that you knew or should have known about a company rule if . . . you were provided a copy or a summary of the rule in writing." WAC 192-150-210(5). Again, this rule does not require that the action be intentional, "willful" or "deliberate." Such an intent is presumed by the act.

The record demonstrates that Boeing had a rule prohibiting the approval of fabricated parts without physically inspecting them.[24] This rule was reasonable, as it is a necessary precaution to protect the public from the consequences of defective

---

[24] FF 11.

-14-

aircraft.[25] Due to the serious consequences of allowing defective parts on aircraft, Boeing was forced to disassemble a partially assembled plane in order to physically inspect all fabricated parts upon discovery of Cuesta's failure to properly inspect.[26] Cuesta's job specifically required him to "inspect, validate, and verify that the part was fabricated pursuant to engineering requirements and installation plans to insure the integrity and performance of the part, and ultimately the safety of the consumer on the aircraft."[27] Cuesta was trained to conduct the required inspections.[28] Cuesta was aware of the rule, and knew he was never to approve or sign off on work without performing the inspection. Despite the rules, and Cuesta's knowledge of the rules, Cuesta violated the rules at least twice by approving a fabricated part without having performed an inspection.[29]

Based on the undisputed findings of fact, we hold that Cuesta committed misconduct per se by marking the parts as inspected and approved contrary to Boeing's rules under RCW 50.04.294(2)(f).

We affirm.

_____

WE CONCUR:

_____

_____

[25] FF 11.
[26] FF 10.
[27] FF 4.
[28] FF 5.
[29] FF 7-9.