IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RACHEL M. GOTTSCHALK,<br><br>                    Appellant,<br>      v.<br><br>EMPLOYMENT SECURITY<br>DEPARTMENT,<br><br>                 Respondent. | No. 86026-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Rachel Gottschalk appeals the Employment Security Department's (ESD) determination that she was overpaid unemployment benefits between August 2, 2020 and September 4, 2021. Gottschalk fails to demonstrate that ESD's commissioner erred or that she is entitled to relief. Accordingly, we affirm.

FACTS

Gottschalk was previously employed as a full-time outside salesperson for Food Services of America (FSA), where she was paid on a one hundred percent commission basis. In February 2020, Gottschalk gave birth to her third child. While Gottschalk was on leave, the COVID-19 pandemic struck Washington. Gottschalk was originally scheduled to return to work on or about August 3, 2020. However, Gottschalk's position required in-person visits with customer businesses, which she could not perform as a person at "high-risk" for COVID-19. Gottschalk was also the primary caregiver for her three children, two

of which were engaged in remote learning. FSA placed Gottschalk on "COVID leave," which allowed her to remain employed, retain her benefits, and receive what her employer deemed "COVID pay" of $1600 approximately every two weeks. FSA encouraged Gottschalk to apply for unemployment benefits in order to supplement the benefits it provided.

Gottschalk applied for unemployment benefits in August 2020. On or about October 1, 2020, Gottschalk spoke to a customer service representative at ESD about how she should answer the question about whether she was able and available to work. The representative gave Gottschalk general guidance but was not able to provide a definitive answer.

Gottschalk continued to seek assistance from ESD on how to file her claim correctly. In December 2020, Gottschalk spoke to another customer service agent, who encouraged Gottschalk to say she was able and available to telework even though Gottschalk explained that she could not telework "because I have an infant who I can't put in daycare." The same representative also encouraged Gottschalk to indicate that she was laid off due to lack of work when FSA was bought by US Foods.

In February 2021, US Foods contacted Gottschalk about returning to work in a similar, but not identical, position. Although the pandemic was ongoing, US Foods would still require Gottschalk to make in-person visits to customers. US Foods did not offer any accommodations and informed Gottschalk that she could either return under the terms it dictated or submit her resignation. Because Gottschalk was still considered high-risk for COVID-19, she chose to resign.

ESD did not ask Gottschalk whether she had left employment until it contacted her in September 2021.

On December 8, 2021, ESD issued a written determination letter denying Gottschalk unemployment benefits as of February 21, 2021, on the basis that she quit her job without good cause. On December 22, 2021, ESD issued two written determination letters denying Gottschalk unemployment benefits from August 2, 2020 through December 5, 2020 and from December 6, 2020 through April 3, 2021, on the basis that she failed to report earnings or hours worked. ESD demanded that Gottschalk repay benefits she received and asserted that it would not waive the repayment obligation due to fraud.

Gottschalk appealed all three determination letters. All three appeals were adjudicated at a single administrative hearing. Neither ESD nor US Foods appeared at the hearing. At the hearing, the administrative law judge (ALJ) asked Gottschalk how she would have managed telework during times when her older children were attending remote school. Gottschalk answered that she did not know. The ALJ also asked Gottschalk why she did not report receiving "COVID pay," to which she responded that an ESD representative informed her that it was considered a bonus and was not deductible from unemployment benefits.

The ALJ determined that Gottschalk did not voluntarily quit her job and was instead laid off because of a lack of work. However, the ALJ also determined that Gottschalk was not able and available to work because she was caring for an infant and supervising two other children who were attending

3

remote school, and therefore was not eligible for unemployment benefits under RCW 50.20.010(1)(c). The ALJ determined that Gottschalk was not at fault for the overpayment of benefits because she was diligent in trying to comply but was misguided by ESD employees. Because Gottschalk was not at fault, the ALJ remanded the matter to ESD to determine whether her repayment obligation should be waived.

Gottschalk appealed the ALJ's rulings to the ESD commissioner. In two separate decisions – one concerning Gottschalk's benefit eligibility while she remained employed and the other concerning her eligibility post-separation – the commissioner affirmed the rulings and adopted the ALJ's findings and conclusions. The commissioner further determined that Gottschalk may be eligible for pandemic unemployment assistance (PUA) benefits but that the ALJ had no jurisdiction over the issue. The commissioner vacated the ALJ's rulings to the extent that they purported to determine Gottschalk's eligibility for PUA benefits and remanded the matter to ESD to determine whether her repayment obligation should be waived.

Gottschalk appealed to superior court, and the superior court transferred the matter to the Court of Appeals for direct review over Gottschalk's objection.

ANALYSIS

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final agency action. *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); *see* RCW 34.05.570. "[T]his court sits in the same position as the superior court, applying the standards of the

WAPA directly to the record before the agency." *Tapper*, 122 Wn.2d at 402. We review the decision of the commissioner, except to the extent that the commissioner adopts the ALJ's findings of fact and conclusions of law. *Cuesta v. Emp. Sec. Dep't*, 200 Wn. App. 560, 569, 402 P.3d 898 (2017). As the party challenging the agency action, Gottschalk bears the burden of demonstrating the invalidity of the agency's decision. RCW 34.05.570(1)(a).

We review findings of fact to determine whether they are supported by substantial evidence. *Barker v. Emp. Sec. Dep't*, 127 Wn. App. 588, 592, 112 P.3d 536 (2005). Substantial evidence means that it is "sufficient . . . to persuade a reasonable person of the truth of the declared premise." *Barker*, 127 Wn. App. at 592. We treat unchallenged findings of fact as verities on appeal and will not make witness credibility determinations. *Tapper*, 122 Wn.2d at 407; *US W. Commc'ns, Inc. v. Utils. & Transp. Comm'n*, 134 Wn.2d 48, 62, 949 P.2d 1321 (1997).

<u>Eligibility for Unemployment Benefits</u>

RCW 50.20.010(1)(c) states that an individual is only eligible to receive unemployment benefits if that person is "able to work, and is available for work in any trade, occupation, profession, or business for which the individual is reasonably fitted." To be available for work, the individual "must be ready, able, and willing, immediately to accept any suitable work which may be offered to him or her and must be actively seeking work." RCW 50.20.010(1)(c)(i). Between February 29, 2020 and June 30, 2021, individuals were not required to accept in-person work but only needed to be able and available to accept suitable

5

telework. RCW 50.20.010(1)(c)(ii). Additionally, the job search requirement was waived during the COVID pandemic. Proclamation of Governor Jay Inslee, No. 20-30 (Wash. Mar. 25, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-30%20COVID-19%20-%20ESD-Job%20Requirements%20%28tmp%29.pdf [https://perma.cc/HT9J-45B7].

Here, the commissioner determined that Gottschalk was not eligible for unemployment benefits because she was not ready, able, and willing to accept telework between August 2, 2020 and September 4, 2021. The commissioner reached this conclusion based on Gottschalk's testimony that she "was the primary caregiver for three children, two of which were remote learning," and that she did not know how she would manage telework alongside her childcare responsibilities.

Although Gottschalk assigned error to all of the commissioner's findings of fact, she does not explain how the findings are not supported by substantial evidence. Instead, she asserts that the commissioner's decisions were in error due to various procedural irregularities. None of those arguments have merit.

First, Gottschalk asserts that the commissioner erred by issuing two decisions instead of one. She cites no authority that would require the commissioner to issue a single decision, even when multiple ALJ orders were issued. Even if the commissioner erred in issuing two decisions, Gottschalk suffered no prejudice, as she obtained judicial review of both decisions in this appeal. Similarly, Gottschalk fails to articulate any prejudice in the commissioner's decision to remand for ESD to determine whether to waive her

6

repayment obligation. Without demonstrating that she suffered prejudice, Gottschalk is not entitled to relief. RCW 34.05.570(1)(d) ("The court shall grant relief only if it determines that a person seeking judicial relief has been substantially prejudiced by the action complained of.").

Next, Gottschalk asserts that she was receiving PUA benefits until ESD "unlawfully switched her claim from a federal claim to a state claim." Gottschalk does not identify any actual evidence to support her contention that ESD "unlawfully switched" her federal PUA claim to a state unemployment claim. The only evidence Gottschalk cites in her opening brief are the applications she submitted which provided an estimate of the benefits she could be eligible to receive. This is not sufficient for Gottschalk to satisfy her burden of demonstrating that the commissioner's decisions were invalid.

Gottschalk further argues that the commissioner erred by not addressing her entitlement to PUA benefits. An administrative law judge adjudicating unemployment benefits only has the power to decide the matters set forth in the appealed determination letter. RCW 50.32.010, .040(1). All three of the determination letters appealed by Gottschalk concerned her entitlement to state unemployment benefits. Only one of those letters mentions PUA benefits and states only that the denial of unemployment benefits would affect her PUA claim. That Gottschalk's PUA claim would be affected was necessarily true because, as the State notes, claimants were not eligible for PUA benefits unless they were ineligible for regular state unemployment benefits. Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281,

7

§ 2102(a)(3)(A)(i) (2020) (codified as amended at 15 U.S.C. § 9021). Nothing in the record demonstrates the ESD ever determined that she was ineligible for PUA benefits. Accordingly, the commissioner was correct that neither he nor the ALJ had the authority to rule on Gottschalk's entitlement to PUA benefits.

Gottschalk also argues that the commissioner "raised new arguments in the final decisions." Specifically, Gottschalk contends that the commissioner sua sponte raised the issue of whether she was unemployed.[1] Gottschalk is both factually and legally incorrect.

Factually, Gottschalk is incorrect because she received notice that the ALJ would consider "[w]hether the claimant was able to, available for, and actively seeking work" prior to the administrative hearing. At the hearing itself, the ALJ questioned Gottschalk about her readiness and ability to accept work. Gottschalk's counsel did not object to this line of questioning.

Legally, the question before the commissioner was whether Gottschalk was entitled to unemployment benefits. RCW 50.32.040(1) states:

> A dispute of an individual's initial determination, determination of allowance or denial of allowance of benefits, or redetermination of allowance or denial of benefits, all matters covered by such initial determination, determination, or redetermination shall be deemed to be in issue irrespective of the particular ground or grounds set forth in the notice of appeal.

As our Supreme Court explained, this statute grants the ALJ the authority "not only to consider the testimony respecting the particular disqualification previously found by the official representative of the department, but also to inquire whether

---

[1] Gottschalk also argues that the commissioner raised "new unsworn, uncross-examined evidence," but does not identify what this evidence is.

appellant was in all respects eligible to receive benefits under the act." *Jacobs v. Office of Unemployment Comp. & Placement*, 27 Wn.2d 641, 650, 179 P.2d 707 (1947).  Gottschalk's eligibility for unemployment benefits having been placed at issue, the commissioner was statutorily authorized to decide whether Gottschalk was ready, able, and willing to accept telework.

Finally, Gottschalk argues that the ESD's determination letters were untimely issued.[2]  Gottschalk did not make this argument at the administrative hearing or in her appeal to the commissioner.  RCW 34.05.554(1) states that "[i]ssues not raised before the agency may not be raised on appeal" in a proceeding under the administrative procedures act, subject to certain exceptions.  Gottschalk has not shown that any of the enumerated exceptions apply in this case.  We decline to address this argument further.[3]

<u>Fees on Appeal</u>

Gottschalk requests an award of fees on appeal pursuant to RAP 18.1, RCW 50.32.160, and RCW 4.84.350.  RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on

---

[2] Gottschalk also contends that the commissioner should not have ruled that she was subject to an earnings deduction from unemployment benefits due to the "COVID pay" she received from her employer.  Because the commissioner determined that Gottschalk was not entitled to *any* unemployment benefits, this issue is moot and we decline to address it.

[3] Gottschalk makes numerous other assignments of error that she fails to address in the argument section of her brief.  "We generally do not consider assignments of error unsupported by argument and citations to the record." *Shelcon Constr. Grp., LLC v. Haymond*, 187 Wn. App. 878, 889, 351 P.3d 895 (2015) (citing *Seattle Sch. Dist. No. 1 v. State,* 90 Wn.2d 476, 496, 585 P.2d 71 (1978)).

review. RCW 50.32.160 states that "if the decision of the commissioner shall be reversed or modified, such [attorney] fee and the costs shall be payable out of the unemployment compensation administration fund." Because we do not reverse or modify the commissioner's decision, Gottschalk is not entitled to fees under this statute.

RCW 4.84.350(1) provides that "[e]xcept as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees." As ESD correctly points out, "RCW 4.84.350 does not apply to claims under the Employment Security Act because the Act has its own attorney fees statute." *Hall v. Emp. Sec. Dep't*, 4 Wn. App. 2d 648, 655, 423 P.3d 278 (2018). Gottschalk is not entitled to fees in this appeal.

We affirm.

WE CONCUR: